# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| SILT SAVER, INC., <br> a Georgia corporation, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 1:16-cv-01137-SCJ |
| Denny Hastings d/b/a FRIENDLY <br> ENVIRONMENT; <br> ATLANTIC CONSTRUCTION <br> FABRICS, INC., a Virginia <br> corporation, d/b/a ACF <br> ENVIRONMENTAL; and Kevin B. <br> Wolfe, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | | |

## SILT SAVER, INC.'S OPENING CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

I.     INTRODUCTION………………………………………………1

II.    BACKGROUND………………………………………………..3

III.   LEGAL STANDARD………………………………………...5

IV.   ARGUMENT…………………………………………………..10

    A. Term 1: "entangled"………………………………………10

    B. Term 2: "ultimate tensile strength"…………………………26

    C. Term 3: "arranged above ground"………………………...29

    D. Term 4: "fabric comprising a plurality of entangled polymer fibers"………………………………………………30

    E. Term 5: "reinforcing material or element"………………30

    F. Term 7: "arranged spaced"………………………………31

    G. Term 8: "ASTM D-4632"………………………………31

    H. Term 9: "the reinforcing material comprises a polymer material entangled within the polymer fibers of the fabric"………………32

    I. Term 10: "the reinforced silt retention sheet . . . has an ultimate tensile strength from about 100 lbs to 350 lbs in the warp direction"………………………………………………...34

    J. Term 12: "reinforcing material secured to the entangled polymer fibers"………………………………………………34

    K. Term 13: "said reinforcing silt retention sheet has . . . a mullen burst strength ranging from about 150 to 450 lbs per square inch"………………………………………………...34

V.    CONCLUSION…………………………………………...35

# <u>TABLE OF AUTHORITIES</u>

## Cases

*AAR Mfg. v. United States*,
　121 Fed. Cl. 553 2015 U.S. Claims LEXIS 690 (Fed. Cl. 2015)…………...……8

*Acumed LLC v. Stryker Corp.*,
　483 F.3d 800, 806 (Fed. Cir. 2007)…………………………………………..10

*Brown v. 3M*,
　265 F.3d 1349 (Fed. Cir. 2001)……………………………………………….6

*Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*,
　757 F.2d 255 (Fed. Cir. 1985)………………………………………………..15

*Canvs Corp. V. United States*,
　126 Fed.Cl. 106 (2016)………………………………………………………11

*Eastman Kodak Co. v. E.I. Du Pont De Nemours & Co.*,
　298 F. Supp. 718(E.D. Tenn. 1969)………………………………………..24

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
　750 F.3d 1304 (Fed. Cir. 2014)………………………………………………18

*Holmberg v. United States*,
　124 Fed. Cl. 610 2016 U.S. Claims LEXIS 9 (Fed. C. 2016)………………….8

*H-W. Tech, L.C. v. Overstock.com, Inc.*,
　728 F.3d 1329 (Fed. Cir. 2014)………………………………………………12

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*,
　US Dist. LEXIS 8168, 2008 WL 341549 (M.D. Fla. Feb. 4, 2008)…………….11

*Kara Tech, Inc. v. Stamps.com, Inc.*,
　582 F.3d 1341 (Fed. Cir. 2007)………………………………………………16

*Libel-Flarsheim Co. v. Medrad, Inc.*,
　358 F.3d 898 (Fed Cir. 2004)…………………………………………………8

*Malibu Boats, LLC v. Nautique Boat Co., Inc.*,
　2015 WL 474878 (E.D. Tenn. Jan. 28, 2015)………………………………..10

*Markman v. Westview Instruments, Inc.*,
　52 F.3d 967 (Fed. Cir. 1995)…………………………………………………9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
　___ U.S. ___, 134 S.Ct. 2120 (2014)………………………………………...10

iii

*NFA Corp. v. Asheboro Elastics Corp.*,
   2000 US. App. LEXIS 68 (Fed. Cir. 2000)……………………………………..25

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2015 (en banc) (citations omitted)……...5, 6, 7, 8, 9, 12

*Resonate Inc. v. Alteon Websystems, Inc.*,
   338 F.3d 1360 (Fed Cir. 2003)…………………………………………………...8

*Slayter & Co. v. Stebbings-Anderson Co.*,
   31 F.Supp 96 (D.C. Md. 1940)…………………………………………………24

*SRI Int'l. v. Matsushita Elec. Corp. of America*,
   775 F.2d 1107 (Fed. Cir. 1985)…………………………………………5, 8, 12

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002)………………………………………………..5

*TomTom, Inc. v. Adolph*,
   790 F.3d 1315 (Fed. Cir. 2015)………………………………………………..8

*Toro Co. v. White Consol. Indus. Inc.*,
   199 F.3d 1295 (Fed. Cir. 1999)………………………………………………..7

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997)………………………………………………..6

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)………………………………………………6, 9

*Wasica Finance Gmbh v. Continental Automotive Sys., Inc.*,
   Appeal from USPTO Patent and Appeal Board in Nos. IPR2014-00295, IPR
   2014-00476 (Decided April 4, 2017) [**Exhibit A**]……………………………...18

*Westwood Chem., Inc. v. Dow Corning Corp.*,
   189 U.S.P.Q. (BNA) 649; 1975 U.S. Dist. LEXIS 14841 (E.D. MI. 1975)
   …………………………………………………………………………………..24

## Statutes

37 C.F.R. § 1.143……………………………………………………………17

37 CFR 1.175………………………………………………………………………1

MPEP § 1414…………………………………………………………………………1

MPEP § 818.01……………………………………………………………………17

**TABLE OF EXHIBITS, REFERENCES, AND ABBREVIATIONS**

| Exhibit or Dkt. # | Abbreviation | Description |
|---|---|---|
| Appendix B Part 1 to Dr. Adanur's Report – Reissue Patent RE42,695 Patent | '695 Patent CC:LL or CC:LL-CC:LL P00000XX | " '695 Patent" refers to the Reissue Patent-In-Suit, RE42,695.  Where applicable, the name is followed by the column numbers and line numbers expressed in the format shown and the page number in the format shown |
| Appendix B Part 2 to Dr. Adanur's Report – the RE42,695 Prosecution History | 695PH at R0000XXX | "695PH" refers to the Prosecution History of the '695 Patent.  Each page of that history is enumerated with 8 digits that begin with the letter "R" followed by the page number of the Prosecution History |
|  | USPTO | United States Patent and Trademark Office |
| Dkt. 50 | Brookstein:XX | The Defendants' Expert Report filed on April 7, 2017, with the XX representing the paragraph number(s) |
| Dkt. 49 | Adanur:XX | Silt Saver's Expert Report filed on April 6, 2017, with the XX representing the paragraph number(s) |
|  | Tbl | Table |
|  | Adanur Dep:PP:LL | Deposition of Dr. Sabit Adanur taken by Defendants on April 25, 2017 – PP refers to page number and LL refers to line numbers – Silt Saver is requesting FE/ACF file the deposition and Errata Sheet with the Court. |

Silt Saver, Inc. ("Silt Saver"), pursuant to the Court's Amended Scheduling Order (Dkt. 31), submits its brief to support its proposed constructions of disputed claim terms of United States Reissue Patent RE42,695E (the '695 Patent) at issue in this Civil Action.

## I.    INTRODUCTION

The '695 Patent is a "reissue" of US Patent No. 7,465,129 (the '129 Patent) and is directed to a reinforced silt retention material for use in filtering sediment, dirt and debris from run-off water flows.   Silt Saver's express purpose in seeking the reissue that resulted in the '695 Patent was to broaden the patent to cover woven and other types of fabrics for use in the claimed invention by dropping "nonwoven" as a limitation.[1]  This purpose was declared from the initial filing and throughout the broadening reissue process, the application was vigorously reviewed by the examiner, and the claims of the '695 Patent allowed with the removal of the limitation of "nonwoven" material from the claims in accordance with USPTO procedures.  The patent was broadened by the removal of "nonwoven" as a limitation, and the '129 patent was reissued as the '695 Patent.

Denny Hastings d/b/a Friendly Environment ("FE") and Atlantic Construction Fabrics, Inc., d/b/a ACF Environmental ("ACF") (collectively "FE/ACF") have raised numerous extraneous terms for construction (compared to two by Silt Saver), but, let

---

[1]   The application for reissue of the '129 Patent was filed under the USPTO's procedure/regulations providing for "Broadening Reissues."  See MPEP § 1414 and 37 CFR 1.175.  There was inconsistency in using nonwoven with and without a hyphen.

there be no mistake about their intentions, FE/ACF's proposed constructions (primarily related to the word "entangled") seek to confuse the straightforward issues presented in this case to reintroduce as a limitation in the '695 Patent claims the very term ("nonwoven") that Silt Saver successfully removed through the USPTO's Broadening Reissue process.  FE/ACF's methodology is to import from extrinsic evidence an inapplicable dictionary definition into the '695 Patent specification, and then try to port that definition into the claims, based simply on the use of the term in one embodiment in the specification.

To reach this conclusion, FE/ACF must wind their way along a treacherous and twisting path.  The Court should not follow FE/ACF's convoluted path based on FE/ACF's asserted "extrinsic evidence," as doing so runs contrary to the most basic principle of claim construction-- that the analysis starts with the claim language and expands to the specification and prosecution history if the claim language is not clear on its face; and thereafter only if, after a careful review of the "intrinsic evidence," the claim language still is not clear may the Court look to the forest of extrinsic evidence. FE/ACF's backwards proposal completely disregards the language of the claims as reissued and asks the Court to instead adopt a claim construction culled from selectively filtered extrinsic evidence.

## II.   BACKGROUND

This litigation involves a pioneering patent in the field of water and erosion management,[2] the '695 Patent, which is directed to a reinforced silt retention sheet material.  Prior to the innovative concepts introduced by the '695 Patent, the industry was dominated by commodity products designed to meet minimum required industry specifications at the lowest cost.  Silt fence products typically are relatively thin, porous geotextile fabrics/sheet materials basically designed to "control[s] sediment runoff from construction sites during active construction.  Silt Fence slows the water long enough to cause sediment to drop out, allowing water to pass through the fabric."  See http://www.acfenvironmental.com/products/perimeter-control/and-sediment silt-fence/silt-fence.  Examples of silt fence products are commonly seen along roadways and new construction areas attached to wooden stakes or other supports, *e.g.*, the photo below (from Defendant ACF's website) shows an installation of conventional silt fence around a drainage culvert:



---

[2] Adanur Dep:41:4-16; Adanur:20, 56.

A problem with conventional silt retention materials, however, is that they "usually do not exhibit enough tensile strength to avoid pulling and tearing at the insertion or puncture points of the fasteners as water, dirt/sediment, and debris bear against the fabric as runoff flow passes therethrough." '695 Patent, 1:55-60 P000015.  When this happens, and the silt fence fabric gives way, dirt and debris are allowed to flow into storm water drainage systems, ponds, streams and rivers, posing a serious environmental hazard/risk.

Being in the construction field, the patentee experienced the problems with conventional geotextile fabrics first-hand and identified the "need for a sediment control product . . . that feature[d] enhanced durability while effectively promoting sedimentation, thereby reducing maintenance and improving overall performance." '695 Patent 2:1-5 P000015.  The '695 Patent accordingly introduced an invention

> directed to a silt retention sheet screen or silt screen material having a body or web that generally is formed of woven or nonwoven filter material . . . that allows water to pass therethrough, but substantially prevents silt and debris from passing therethrough" by employing "one or more reinforcing elements, strips, or belts attached to the web at spaced intervals along or across the width of the web.

'695 Patent 2:9-18 P000015.

The novelty and importance of the invention has been widely recognized and lauded in the industry[3] and is now being blatantly copied by FE/ACF - which include not

---

[3] '695 PH R000631-633 at R000631 (McGill Associates letter of praise – July 27, 2007); R000628-629 at R000628 (Florida Department of Transportation approval Memorandum

just a competitor of Silt Saver, FE, but also a major distributor of Silt Saver's own products (ACF), working in partnership with that competitor. The copying by FE/ACF is further evidence of the '695 Patent's importance and pioneering status.

## III.   LEGAL STANDARD

Claim construction "is a question of law, to be determined by the court." Claim construction begins with the claim's words, because "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2015 (*en banc*) (citations omitted); *SRI Int'l. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (the language of a patent's claims defines the scope of what the patents cover). A claim term is given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.

Thus, Courts "indulge a *'heavy presumption' that a claim term carries its ordinary and customary meaning*." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (*emphasis added*). In cases where "the ordinary meaning of the claim language as understood by a person of skill in the art may be readily apparent even to lay

---

– December 14, 2006 – "comparable to or more effective than the current department protection techniques"); R000644-652 at R0000649-50 (*Erosion Control* feature article "In Compliance" 2009); R000654-655 ("Top Rollout" award from *Better Roads* magazine).

judges, . . . claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d 1314 (*citing Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)).  When claim terms have clear ordinary meaning*, claim construction must not become "an obligatory exercise in redundancy." U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (*emphasis added*).  A district court thus is not obligated to construe terms with ordinary meanings or parse the meaning of every word in the asserted claims.  *See id.* ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.").

First, claim construction begins with the words of the claims, as the claims of a patent define the scope of the right to exclude, and the claims themselves, therefore, are a primary source for construction of a term.  *Phillips*, 415 F.3d at 1312 and 1314; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the claims themselves . . . to define the scope of the patented invention.").  Thus, claim terms should be construed in the context of and consistently with surrounding words in the claim.  *Phillips*, 415 F.3d at 1314.  This exercise is particularly controlling in this case, because the term "nonwoven" was explicitly removed from the claims and a claim depending from claim 1 was added (claim 25)

6

which added only one additional limitation – that the silt retention sheet fabric be "non-woven."  '695 Patent:27:12-13.

Second, the Court should consider the meaning of claim terms in light of the specification and prosecution history, which are often quite instructive.  *Id.* at 1315.  However, while the specification undoubtedly can serve as a guide to claim construction, the Federal Circuit has repeatedly cautioned against importing unstated limitations from the specification into the claims.[4]  *Id.* (stating that it is a "'bedrock principle' of patent law that 'the claims of a patent define the invention' . . . [and thus] [t]he written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of the claims.'") (citations omitted).  However, if the specification reveals "a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess[,] . . . the inventor's lexicography governs." *Phillips*,  F.3d at 1316; *Toro Co. v. White Consol. Indus. Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) (an explicit definition provided by the applicant for a term will control interpretation of the term as it is used in the claim).

_____

[4] FE/ACT's efforts to import unstated limitations permeates this case but is perhaps best illustrated by their efforts to add the limitations "embedded" and "entrapped" to Term 9, discussed beginning at page 32.  See Adanur Dep:274:20-281:4 (six pages of questions by counsel for FE/ACF pointing out uses of terms "embedded" and "entrapped" near use of term "entangled" in specification with Dr. Adanur explaining similarities and differences.).  See also Adanur Errata, page 18, first 2 rows for identification of Mr. Soller's erroneous assertions.

In addition, the scope of a patent should not be limited to a particular embodiment discussed in the patent's specification, even a preferred embodiment, absent a clear indication in the patent's intrinsic record showing that the patentee intended that to be the only embodiment. *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1328 (Fed. Cir. 2015) ("While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims.  We depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal."); *Resonate Inc. v. Alteon Websystems, Inc*., 338 F.3d 1360, 1367 (Fed Cir. 2003) ("limitations may not be read into a claim from a preferred embodiment when the claim language is broader than that embodiment"); *Libel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 913 (Fed Cir. 2004) ("it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."); *AAR Mfg. v. United States*, 121 Fed. Cl. 553, 575, 2015 U.S. Claims LEXIS 690, *56 (Fed. Cl. 2015).  *See also Holmberg v. United States*, 124 Fed. Cl. 610, 616, 2016 U.S. Claims LEXIS 9, *12 (Fed. C. 2016) (*citing Phillips,* 415 F.3d at 1320) ("noting that reading a limitation from the written description into the claims is 'one of the cardinal sins of patent law'").

8

Likewise, under the Doctrine of Claim Differentiation, if one claim expressly includes a limitation whereas another does not, the limitation should not be read into the claim that does not include it. *SRI Int'l.*, 775 F.2d at 1122 ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.") (citations omitted). Claims 1 and 25 exemplify this principle in this case as detailed at page 12].

Lastly, extrinsic evidence concerning scientific principles, the meaning of technical terms, and the state of the art can help determine the ordinary and customary meaning of a term, especially when the term has a particular meaning in a field of art. *Phillips*, 415 F.3d at 1314. However, the "extrinsic evidence" is **not** considered as important as the intrinsic evidence (i.e., the claims, specification and prosecution history), and is useful only where the Court is unfamiliar with the terminology of the art.[5] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (emphasis added). *See also, Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("Only if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should the trial court have resorted to extrinsic evidence, such as

---

[5] Dr. Adanur repeatedly pointed out in his deposition that several terms had technical connotations, but were not terms of art specific to the textile industry. See Adanur Dep:73:22-75:11; 205:13-208:11; 221:23-222:14; 265:8-266:15; 285:24-286:21; 292:25-293:10.

expert testimony, in order to construe claim 1." – "[E]xpert testimony, which was inconsistent with the specification and file history, should have been accorded no weight.").

As to the two claim terms FE/ACF assert are "indefinite," it is FE/ACF's burden to prove by clear and convincing evidence that the claims, "read in the light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, ___ U.S. ___, 134 S.Ct. 2120, 2124 (2014). See also *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) (noting that claim construction "need not always purge every shred of ambiguity"), and *Malibu Boats, LLC v. Nautique Boat Co., Inc.*, 2015 WL 474878, at *13 (E.D. Tenn. Jan. 28, 2015) ("'absolute precision' is not required and 'some modicum of uncertainty . . . is the price of ensuring the appropriate incentives for innovation.'") (*quoting Nautilus*, 134 S.Ct. at 2128-29).

## IV. <u>ARGUMENT</u>

### A. <u>Term 1: "entangled"</u>

"Entangled" appears in asserted Claims 1, 18, 23, and 27. Silt Saver proposes that "entangled" be construed to mean "**connected and not readily separated**." FE/ACF propose it be construed as "to twist together or entwine into a confusing mass; snarl."

FE/ACF's construction makes no sense as applied to the invention of the '695 Patent, namely a **reinforced silt retention sheet** designed to filter sediment and debris from run-off water.  FE/ACF's construction is more suited to describe a ball of yarn, a beaver dam, or another snarled "mass" that would block the flow of water entirely.  The purpose behind FE/ACF's construction is to confine all claims with the term "entangled" to nonwoven fabrics.  Silt Saver's construction includes <u>both</u> woven and nonwoven fabrics and is fully supported by and consistent with the <u>Intrinsic Evidence</u>, as well as the established directives/canons of claim construction, notably the prohibition not to import a limitation from an embodiment into the claims.  *See Canvs Corp. V. United States*, 126 Fed.Cl. 106, 115 (2016).  On the other hand, FE/ACF's claim construction would not cover any of the embodiments disclosed in the patent.  Adanur Dep., at 304:23-305:12.

> [A]n interpretation of a claim term that would exclude a preferred embodiment of the invention "'is rarely, if ever correct and would require highly persuasive evidentiary support'" to establish that a patent's prosecution history excludes some but not all of the preferred embodiments.

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, US Dist. LEXIS 8168, *135-136, 2008 WL 341549 (M.D. Fla. Feb. 4, 2008) (citations omitted).  FE/ACF's construction would exclude both woven and even nonwoven silt retention fences as depicted in *the specification embodiments* as none is a twisted or entwined confused mass that is snarled.  FE/ACF have no "highly persuasive evidentiary support" otherwise.  See discussion at page 25.

As a start, the Court need look no further than the plain language of the '695 Patent claims themselves.  In particular, in claims 1-3, 14, 18, 20, and 23, it is seen that the term "nonwoven" was removed as a limitation, as shown by the bracketing – [nonwoven] or [non-woven] – around the term in these claims.  Col. 1, lines 4-6 of the '695 Patent further clearly states that **"[M]atter enclosed in heavy brackets [ ] appears in the original patent but forms no part of the reissue specification … ." (Emphasis in original).**  Thus, the USPTO, via the reissue proceeding, expressly removed "nonwoven" and "non-woven" as a limitation, as shown by the express and unambiguous language of the reissued '695 Patent claims themselves.

Moreover, staying with the plain language of the claims, Claim 25 recites **"[T]he silt retention sheet of claim 1, wherein the fabric comprises a "non-woven fabric." (Emphasis added)**.  Since claim 25 adds the further limitation to claim 1 of the fabric being a "non-woven fabric," reading that limitation into claim 1, as proposed by FE/ACF, would render claim 25 meaningless, and would violate the Doctrine of Claim Differentiation, which provides that "when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement."  *SRI, Int'l v. Matsushita Elec. Corp*., 775 F.2d 1107, 1122 (Fed. Cir. 1985), *followed by H-W. Tech, L.C. v. Overstock.com, Inc.*, 728 F.3d 1329, 1333 (Fed. Cir. 2014) ("well settled").  FE/ACF's expert even

acknowledged the primacy of starting with the claims themselves (*Phillips*, 415 F.3d at

1312) see Brookstein:18:

> I have been informed and understand that it is a bedrock principle of patent
> law that the claims of a patent define the invention to which the patentee or
> assignee is entitled the right to exclude.

Dr. Brookstein also mentions Claim Differentiation, though he ignores the application of

these principles/canons of claim construction in this case. On the contrary, however, the

clear, unambiguous language of the claims, as further supported by the Doctrine of Claim

Differentiation requires the conclusion that Claim 1 includes more than nonwoven

fabrics[6] unless the patentee has disavowed that construction or acted as his own

lexicographer, which is not the case here.

In addition to the plain and unambiguous language of the claims, further intrinsic

evidentiary support is found throughout the specification and prosecution history

materials. For example, during the broadening reissue prosecution, the Patentee

submitted the following chart:

---

[6] Again, it must be noted that the definition proposed by FE/ACF would exclude both
woven and nonwoven silt retention fences, thus excluding every embodiment disclosed in
the patent. See page 25.

13

| Claim | Support in Patent Specification |
|---|---|
| 1. A reinforced silt retention sheet arranged above ground, for use in a silt management application, comprising: | The present invention is directed to "a silt retention sheet or silt screen material and is for use in water runoff management and erosion control." (See Col. 1, l. 1 (Title) and ll. 14-16; Col. 7, ll. 3-9.) |
| a flexible, water permeable, fabric comprising a plurality of entangled polymer fibers; | The reinforced silt retention sheet has "a body or web that generally is formed of woven or non-woven filter material such as a spinbond polypropryline, polyester, or similar flexible polymeric material that allows water to pass therethrough, but substantially prevents silt and other debris from passing therethrough." (Col. 2, ll. 1-9; Claim 1 as issued.)  "The silt retention material used in accordance with any of the various aspects of the present invention may be formed from one or more polymers or polymeric materials." (Col. 5, ll. 51-54, Claim 1 as issued.)  "Thus, by way of example and not by limitation, the material used in accordance with the present invention may be a woven polypropylene fabric, a nonwoven |

R000082

| | polypropylene fabric, for example, a spunbond polypropylene fabric, a woven polyethylene terephthalate fabric, a nonwoven polyethylene terephthalate fabric, for example, a spunbond polyethylene terephthalate fabric, a needlepunched polyethylene terephthalate fabric, a needlepunched spunbond polyethylene terephthalate fabric, a woven nylon fabric, woven natural fiber fabric, or any combination thereof." (Col. 6, ll. 8-17). |
|---|---|

PH at R000082-83 - Appeal Brief of Silt Saver [PH at R000079-86] (emphasis added).

This chart confirmed to the USPTO that woven fabrics were included within the

definition of, and thus covered by the term "entangled."  This is in keeping with the

purpose of filing the broadening reissue application as expressly stated by the patentee at PH at R000721-723 (from the Preliminary Amendment PH at R000714-724) to remove the term/limitation of "nonwoven" from the claims, as affirmed in the accompanying Reissue Declaration stating that the patentee had claimed less than what he was entitled to by originally limiting his claims to nonwoven materials.  PH at R000725-729 at 726 (Reissue Application Declaration by Inventor).  The Federal Circuit has emphasized the importance of the prosecution history in determining proper claim construction and has cautioned against exalting form over substance.  *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 260 (Fed. Cir. 1985).  FE/ACF's objective of reinserting a limitation specifically removed under the full scrutiny of the USPTO in favor of selectively importing a dictionary definition culled from extrinsic evidence thus should not be adopted.

While FE/ACF submitted isolated passages of the specification as "intrinsic evidence," their cited passages do not support the specific definition of "entangled" they offer.[7]  In particular, FE/ACF focus on a particular embodiment of the invention to the exclusion of the entirety of the disclosure, not to support their definition, but instead to add a limitation to the claims.  For example, the FE/ACF ignore the multiple passages of the specification and prosecution history explicitly discussing how "by way of example

---

[7] Adanur:69-70; Adanur Dep:79:18-91:1 (with errata changes); 250:17-255:7; 274:20-281:4 (with errata changes).

and not limitation, the present invention may be a woven polypropylene fabric, a nonwoven polypropylene fabric, … ."  (See Col. 6, ll. 13-22); and further describing alternative materials for use as part of the invention, e.g. the silt retention sheet has "a body or web that is generally formed of woven or non-woven filter material."  (See Col. 2, ll. 11-12).  While the '695 Patent does reference embodiments using a nonwoven, it is established law that "[T]he patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or impart a limitation from the specification into the claims."  *Kara Tech, Inc. v. Stamps.com, Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2007).  FE/ACF's citations to the patent specification, when properly considered as part of the <u>entirety</u> of the specification, not only fail to support limiting the claims to a "snarled" mass that excludes woven silt retention fences (and even nonwoven silt retention fences), they violate the settled prohibition against limiting a claimed invention to a particular embodiment, even a preferred embodiment.

FE/ACF's citations to the reissue prosecution likewise do not support their proposed construction.  For example, FE/ACF point to the Restriction Requirement cited during prosecution of the '695 Patent, restricting the claims between:

> Species A, the embodiment of a reinforced soil retention sheet comprising a plurality of entangled polymer fibers, inclusive of non-woven fabrics; and

> Species B, the embodiment of a reinforced soil retention sheet comprising a plurality of polymer fibers, inclusive of woven and non-woven fabrics."

16

In response, the Applicant elected "Species B [a reinforced soil retention sheet comprising a plurality of polymer fibers, **inclusive of woven and non-woven fabrics**]," but made this election "**with traverse**."  (See *id*., emphasis added).  USPTO procedures require that an Applicant make an election upon being presented with a restriction requirement, and that this election be made either without traverse or with traverse.  *See* MPEP § 818.01 and 37 C.F.R. § 1.143.  If the Applicant does not agree with the restriction requirement, the election between the recited species is made with traverse, meaning the Applicant does not agree with the Examiner's characterization of the invention into the two recited species.  In support of the traversal, Applicant pointed out to the Examiner how all claims were amended to remove "non-woven" as a limitation and that the phrase "woven or non-woven" was deleted from proposed independent claims 30 and 33.  See *id*.  Importantly, the restriction requirement **was withdrawn**[8] by the Examiner in her subsequent Office Action dated May 11, 2010.  [See R 000520].

Despite FE/ACF's argument that the initial "species" restriction infers that the term "entangled" must be limited solely to non-woven fabrics, not only does the very language of this restriction **not** make such an exclusion, the Examiner's subsequent complete withdrawal of this restriction proves just the opposite – *i.e.*, that the Examiner recognized

---

[8] FE/ACF have persistently ignored this withdrawal as shown by the deposition questioning of Dr. Adanur.  Adanur Dep:68:1-71:25.  Any reliance placed by FE/ACF in its brief on this withdrawn "restriction" is misplaced.

no such limitation of "entangled" and instead agreed with the Applicant/Patentee that the claims were inclusive of both woven **and** non-woven fabrics.  [See *id*.].  At the conclusion of the reissue prosecution, the Examiner's actions further were reviewed in detail, as evidenced by completion of the Examiner's reissue checklist, confirming the propriety of her examination and reissuance of the claims of the '695 Patent without the term "non-woven" as a limitation.  [See R 000031-36].

As FE/ACF's expert has acknowledged the "standards for finding lexicography and disavowal are exacting."  Brookstein:22.  *See GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014).  The Federal Circuit went on to say:

> To act as its own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term."  Similarly, disavowal requires that "the specification [or prosecution history] make [] clear that the invention does not include a particular feature."

*Id.* (citations omitted).  This "axiomatic" imperative is discussed in *Wasica Finance Gmbh v. Continental Automotive Sys., Inc.*, Appeal from USPTO Patent and Appeal Board in Nos. IPR2014-00295, IPR 2014-00476 at 15-17 (Decided April 4, 2017) (attached hereto as **Exhibit A**).   Here, none of FE/ACF's intrinsic evidence meets this high bar of showing a clear disavowal of claim scope to exclude "woven" fabrics, or a clearly expressed intent to define the term "entangled" as being only applicable to nonwoven fabrics, or to mean "to twist together or entwine into a confusing mass; snarl."

It is further notable that FE/ACF do not point to a definition of "entangled" included in the specification or prosecution history.  Instead, FE/ACF and their expert engage in a substantial exercise of deductive reasoning to import a limitation from an embodiment (using a nonwoven fabric) into the claims.  In order to support this conclusion, they adopt a definition of "entangled" that seems to be based on a single extrinsic evidence reference which FE/ACF crown as "the dictionary definition." Brookstein:67.  Interestingly, however, this "dictionary definition" is of the word "entangle," and FE/ACF make no effort to adapt the term to the past tense, i.e., "entangled," as used in the claim.  More significantly, their definition is from the American Heritage College Dictionary and falls far short of addressing the far more complete definitions offered by Silt Saver's expert in his report.  Adanur:88-91.  In particular, Dr. Adanur reviewed FE/ACF's cited dictionary reference and further identified a specific definition of the term "entangled" in paragraph 88 of Webster's Third New International Dictionary of the English Language Unabridged, published by G. & C. Merriam Company, Springfield, Massachusetts in 1966 at page 756, which definition-1a is recited as:

Twisted together:  INTERTWINED, INTERWOVEN, SNARLED.

FE/ACF thus seemingly ask the Court to rely on a less comprehensive definition/version that leaves out the word "interwoven" and, based on that omission

from their definition, assert that "entangled" CANNOT include woven fabrics.  Adoption of "the dictionary definition" offered by FE/ACF would defeat the very purpose of the broadening reissue conducted, circumventing the patentee's clearly stated intent to remove "nonwoven" as a limitation, and instead import a limitation into the claims from an embodiment of the specification.

FE/ACF's expert report, while citing isolated passages of the '695 Patent, focuses the weight of discussion/analysis on FE/ACF's <u>extrinsic</u> evidence.  For example, apart from agreeing with the Examiner's initial entry of the Restriction Requirement, Dr. Brookstein does not substantively address the fact that this Restriction was withdrawn, nor does he offer much in the way of analysis of his cited intrinsic evidence under the canons of claim construction, such as the application of the Doctrine of Claim Differentiation, other than to state it is not a rigid rule.  Brookstein:24.

By contrast, Silt Saver's expert, Dr. Adanur, explains the application of the intrinsic evidence to the '695 Patent claim terms  (Adanur:30;34;66;71),  particularly setting forth each instance of the use of the terms "entangled," "entangling," and "entanglement" in his report along with his analysis of the context and use of the terms. Adanur:69 (including 61 lines of analysis).  This analysis shows that the term "entangled" is not defined as being exclusive to nonwoven fabrics and, when examined in context, clearly applies to woven fabrics.

For example, in discussing Figure 8 of the '695 Patent, Dr. Adanur notes that the scrim can be entangled into a woven fabric "by itself being either woven or needlepunched into the woven fabric."  Adanur:69.  Paragraph 120 of Dr. Brookstein's Report also discusses this Figure 8 (with his annotations thereto), and quotes, with his emphasis, from '695P Col. 17:1-6, stating:

> *Thus, in one particular example, the system may include at least one wood stake, at least one fastener, for example, a staple, and **a needlepunched spunbond polyester nonwoven fabric having a fiberglass scrim 616 entrapped and entangled with the fibers 618** without additional adhesive or mechanical bonding.*

Dr. Brookstein's annotated Figure 8 is shown below; but upon examination it actually shows the fiberglass scrim is embedded into the material and is neither snarled nor attached as a "confusing mass:"



The fiberglass scrim is shown as circles designated 616 (mislabeled by Dr. Brookstein as 618) and is entangled with the fibers 618, notably extending through the length of the

fabric in a parallel orderly way.  The scrim is not snarled or twisted together within the sheet in a confused mass - contra to FE/ACF's proposed construction of "entangled." Rather, the scrim is entangled with the fabric so that it is connected and not readily separated, even though it is not a nonwoven material.  *See* Adanur Dep:89:4-90:20 (including Eratta Sheet changes); 243:15-25 (fiberglass scrim shown in Fig. 6).

Dr. Brookstein's over-emphasis of "one particular example" and ignoring the fact that the specification explicitly describes the interchangeability of woven and nonwoven material ['695P 2:9-14; 2:42-45 P000015; 4:45-49 P000016; 6:13-22; 6:54-60 P000017; 8:36-39 P000018; 9:41-45; 10:42-44 P000019], leaves a big gap that renders his opinions highly suspect.  For example, the substitution of other materials, such as a woven fabric for the described nonwoven fabric was specifically contemplated at '695P 16:50-51P000022 – stating with regard to the embodiment of Fig. 8:  "[a]ny silt retention fabric may be used, including but not limited to, those described herein or contemplated hereby."  FE/ACF simply have offered no basis or support to ignore such clear and plain language of the '695 Patent in favor of their proposed extrinsic evidence.

It is important to understand that FE/ACF's construction is guided by their citation of numerous examples of <u>extrinsic evidence</u> where the term "entangled" is used in the description of nonwoven fabrics and several examples where the term "interlaced" is used in the description of woven fabrics.  Based on these examples, FE/ACF use their

expert to assert that woven fabrics cannot be entangled since they are referred to as being

"interlaced."  That begs the question of whether an interlaced fabric is an entangled

fabric.  Clearly, it is.  Adanur Dep:92:4-94:14; 116:3-118:11; 121:4-18; 134:12-135:21;

137:7-139:24; 148:2-16; 176:19-177:20.  For example, U.S. Patent No. 5,108,224 of

*Cabaniss* – cited as a primary reference during prosecution <u>and</u> in FE/ACF's invalidity

contentions – describes a "silt control fabric comprising a plurality of substantially flat

yarns in one direction interwoven with a plurality of substantially round monofilament

yarns."  (Col. 4, ll. 19-25).  Figures 1 and 5 of this reference are shown below:



If the claims were limited solely to nonwovens, why did the Examiner, and more notably,

why would FE/ACF place any/such emphasis on a "woven" silt control material as prior

art to the claims?  Still further, United States Patent 4,069,564 issued on January 24, 1978

23

(Attached hereto as **Exhibit B**)[9], refers to interlacing and entangling interchangeably as shown by this excerpt from Col. 1, lines 10-11:  "The present invention relates in general to the production of interlaced or entangled multifilament yarns."  *See also Eastman Kodak Co. v. E.I. Du Pont De Nemours & Co.*, 298 F. Supp. 718, 723, 724, 727, 730 (E.D. Tenn. 1969) ("The yarn as a whole was loop free, was compact, and was coherent due to the filament *interlace or entanglement*.") (*emphasis added*); *Id*., at 728 ("Plaintiff failed to show by a preponderance of the evidence . . . that Dyer's 1953 application disclosed the entangled coherent yarn of the invention.").[10]  "Coherent" is not "snarled" or a "confused mass."  The '695 Patent, too, refers to needlepunching as "converting batts of loose staple or continuous fibers, or a combination of staple fibers into a *coherent* nonwoven fabric.  '695 Patent 5:52-54 (*emphasis added*).  In their concerted effort to exclude woven fabrics from the claims, FE/ACF have excluded every disclosed embodiment:

> Q. (by Mr. Watkins for Silt Saver)     If you substitute the term that is
> proposed by Dr. Brookstein for "entangle" and replaced and said [sic] and

---

[9] This reference is offered solely to refute Dr. Brookstein's deductive conclusion that "interlaced" fabrics cannot be entangled.

[10] *See also Westwood Chem., Inc. v. Dow Corning Corp.*, 189 U.S.P.Q. (BNA) 649, 676; 1975 U.S. Dist. LEXIS 14841 at *103 (E.D. MI. 1975) ("long filaments which interlace and give rise to a structure resembling a heap of brushwood.  Such a structure entangles a large volume of water in the spaces between the filaments"); *Slayter & Co. v. Stebbings-Anderson Co.*, 31 F.Supp 96, 100 (D.C. Md. 1940) ("its fine interwoven fibers being entangled together").

construed it as, "to twist together or entwine into a confusing mass or snarl," what types of silt retention fences would be encompassed by that?

A.  That's kind of difficult to answer.  I mean, here, confusing mass and snarl – none of the silt fences are like a confusing mass or a snarl, so that would be describing something different.

Q.  Would it cover any of the embodiments disclosed in the patent?

A.  No.

Adanur Dep:304:23-305:12.

FE/ACF's effort to drop/exclude "interwoven"[11] from the definition of "entangled," and to exclude woven fabrics from all claims using the term "entangled," are not supported by the intrinsic <u>or</u> the extrinsic evidence, considered in their entireties. Instead, it is a veiled attempt to reintroduce the very limitation which the USPTO's reissue specifically excluded after careful examination, including an appeal.  By contrast, Silt Saver's proffered definition of **"connected and not readily separated"** is well supported and will properly inform the jury of the breadth of the term in easily understood language that does not depart from the intent of the patentee or the scope of the claims.

---

[11] In *NFA Corp. v. Asheboro Elastics Corp., 2000 US. App. LEXIS 68* at *5 (Fed. Cir. 2000), the court related the terms entangle and interwoven when discussing the term "mesh":  "The word 'mesh' (when used as an intransitive verb) means, 'to be or become entangled . . . engaged or interlocked" with.  These dictionary definitions strongly suggest that the pull cord must be intertwined, interwoven or otherwise disposed *between* the threads that form the elastic web."  (citations omitted)

**B.   <u>Term 2: "ultimate tensile strength"</u>**

Silt Saver proposes construing "*ultimate tensile strength*" as "***the tensile strength***

***at which at least a portion of the fabric will fail***."   FE/ACF propose:

> "Ultimate tensile strength is measured according to the ASTM D-4632
> standard test procedure and means "the maximum force applied to a
> reinforced silt retention sheet in a tensile test carried to rupture."

Elsewhere, FE/ACF propose construing ASTM D-4632 [Dkt. 44-2 at p. 23]:

> "ASTM D-4632" is a published standard test method for grab breaking load
> and elongation of geotextiles to determine the effective strength of a fabric
> using 4-inch wide fabric specimens that are gripped and pulled by jaws.  The
> breaking load for multiple specimens is measured, and the average of the test
> values is used, without subtracting any standard deviation(s).

And further, they qualify how the test is to be performed [Dkt. 44-2 at p. 35-36]:

> The ASTM D-4632 test procedure (as construed above) is performed ***with a***
> ***reinforced portion of the fabric centered in the jaws*** of the test fixture, and
> the average of the test values is used without subtracting any standard
> deviation(s).  (***emphasis added***)

While the exact phrase "ultimate tensile strength" is not stated in the patent specification,

the material strengths, including ranges of strengths to the point of failure are discussed

and described by the patent.  See '695 Patent 1:55-60; 6:56-60 Tbl 1; 12:31-59.

FE/ACF seek from the combination of their constructions to require an average

figure be obtained using the ASTM D-4632 test procedure and testing only on the area

where the reinforcing element is attached to the fabric sheet.  See the "Grab Test"

illustration shown at Brookstein:142 at page 60.  As Dr. Adanur explained in his

deposition, Dr. Brookstein's illustration is wrong.  Failure will occur between the jaws, not at the edges where no pressure is applied.  Adanur Dep:209:21-210:15.  If only the reinforced area is tested, as FE/ACF propose, the product would test at a much higher strength than its suitability for the intended purpose – an illogical result.  Adanur Dep:210:18-211:3.

Again, starting with the claim language, none of claims 20, 24, 28, or 31 include ASTM D-4632 as a stated limitation.  Adding ASTM D-4632 into these claims additionally imports an average tensile strength measurement that would potentially inaccurately increase the measured strength by including measurements along the reinforcement alone. (See Jt. Ex. P at column 26, line 40-Column 28, line 27- Claims 20, 24, 28, and 31 [P000027-28]).  As persons of skill in the art understand, in a silt retention application, if any portion of the fabric sheet fails, silt flows through the sheet.  This point of ultimate strength is the point at which the intended use is no longer being met (i.e., when/where the fabric fails), and thus cannot be satisfied by looking only at the point of greatest strength or by taking an average of the strengths of various points along the fabric.  Taking an "average" measurement as proposed by FE/ACF would necessarily involve various points that could include the reinforcement, necessarily increasing the strength value – and thus providing a false value greater than the point at which the silt fence would functionally fail.

27



This term also is not indefinite.  The Examiner understood the term "ultimate tensile strength" was the tensile strength at which at least a portion of the fabric will fail—otherwise, the screen could not perform the intended function of retaining silt. (See for example, Jt. Ex. A Pros History of 11/283173—Response dated June 10, 2008, p. 8, 12 [A000028 and A000034] and Notice of Allowance [A000013]).

Lastly, as discussed by Dr. Adanur (at Adanur:93-109), the "Minimum Average Value" denoted in the specification as the result of the ASTM D-4632 average calculation is understood by persons skilled in the art to be different from the "ultimate tensile strength" recited in the patent claims.  Adanur:101-102.  Dr. Adanur explains the purpose and function of the reinforcing elements to reduce the force on the unreinforced portions of the silt retention fence, and thus how testing the fabric's reinforcing elements would skew the result higher than the point of actual failure of the fence fabric.

Adanur:97; 106-107.  This skewing takes place if even one reinforcing element is tested and the resulting average is used.  *Id.*  FE/ACF propose testing only reinforcing elements to arrive at a value wholly unrelated to the failure point of the silt retention fence fabric. Under FE/ACF's analysis and construction, the unreinforced portions of the silt retention fence could burst, all retained water and debris could escape, and there <u>still</u> would be no failure of the fence.  A person of ordinary skill in the art would understand that the patent is designed to improve performance, not return an artificial average number unrelated to the silt retention fence's failure point.

### C.  <u>Term 3: "arranged above ground"</u>

Silt Saver's position is that no construction is necessary.  FE/ACF propose construing "*arranged above ground*" as "<u>installed above ground for use in a silt management application</u>" [Dkt. 44-2 at 1],  Although silt retention fences are uniformly arranged above ground (as it is the surface water flow and runoff of debris they are designed to control),[12] the installation itself also requires posts driven into the ground, and often the bottom portion of the fence material is recessed into the ground to prevent water from flowing underneath the fence, eroding the ground, and defeating its purpose.

---

[12] The arrangement must follow the surface topography to systematically protect areas most vulnerable to runoff.

FE/ACF seek to introduce a limitation, presumably to later argue that any product installed with any portion thereof not above the ground would not infringe.  Adanur:110.

### D.   Term 4: "fabric comprising a plurality of entangled polymer fibers"

Silt Saver believes no construction is necessary other than for the previously discussed term "entangled" (**Term 1**).  FE/ACF propose "<u>fabric including multiple polymer fibers entangled with each other in a nonwoven manner</u>."  [Dkt. 44-2 at p. 3] Substituting "multiple" for "plurality," adds nothing, and more significantly, FE/ACF seek to introduce an additional limitation of "with each other in a nonwoven manner." This suggested addition is separate from FE/ACF's definition of "entangled,"[13] and is offered with no specification or prosecution history citation discussing "a nonwoven manner."  Adanur:111(c).  FE/ACF's construction is another attempt to import a limitation into the claim that was explicitly removed from the reissued patent.

### E.   Term 5: "reinforcing material or element"

Silt Saver's position is that no construction is necessary.  FE/ACF propose "<u>material or element that is capable of enhancing the strength or puncture resistance of</u>

---

[13] **Term 6** "reinforcing material or element . . . secured with the entangled  polymer fibers" presents the identical issues with one additional substitution sought by Defendants – the substitution of "attached to" for "secured with." Dr. Adanur explains that this substitution is unhelpful.  Adanur:113.  **Term 12** "reinforcing material secured to the entangled polymer fibers" presents the identical issues with one additional substitution sought by Defendants – the substitution of "attached" for "secured."  Adanur:120.

the fabric." [Dkt. 44-2 at p. 11]  There is nothing confusing about the term "reinforcing,"

and FE/ACF's construction notably is intentionally incomplete as listing only "strength"

and "puncture resistance," which construction is likely to confuse the jury and improperly

limit this term.  In particular, per the '695 Patent:

> The reinforcing material or element may be any suitable construct or
> element (collectively 'elements') that is capable of <u>enhancing at least one of
> the tensile strength, burst strength, puncture resistance, tear strength, or the
> like, of the woven or nonwoven material</u>.  ['695 Patent 6:56-60 P000017
> (emphasis added)]

*See also* Adanur:112.

### F.  Term 7[14]: "arranged spaced"

FE/ACF contend this term is indefinite.  Silt Saver believes no construction is

necessary, but should the Court decide to construe the term for the jury, "**separated in an**

**ordered way**" is a proper construction.  See SS-EX0030069-74 at SS-EX-0030071 and

SS-EX-0030074 supporting Silt Saver's position.  Adanur:114 *citing* Appendix C.

### G.  Term 8: "ASTM D-4632"

FE/ACF propose the following relating to this term:

"ASTM D-4632" is a published standard test method for grab breaking load
and elongation of geotextiles to determine the effective strength of a fabric
using 4-inch wise fabric specimens that are gripped and pulled by jaws.  The
breaking load for multiple specimens is measured, and the average of the test
values is used, without subtracting any standard deviation(s).

---

[14] **Term 6** is discussed in footnote 13 at page 30.

Silt Saver adopts Dr. Adanur's comments on whether this term should be construed for the jury:

> ASTM D-4632 is a complex, multi-page (four 2-column pages) standard [SS-EX-0030049-52] that was composed by experts over an extended period of time and which went through many drafts with experts in the field submitting language back and forth to ensure that the test methodology described therein would be consistently applied to determine an average strength of a fabric. Testing labs are generally capable of performing this test and providing a result for different fabrics. It is not necessary (or appropriate in my opinion) for the parties or Court to undertake defining this standard separately from its own terms. I submit that construing this standard as proposed by the Defendants is not necessary and would impose additional, artificial limitations not expressly recited by the claims. This standard is applied in different ways in different contexts to achieve its purposes and serves as carefully defined guidelines. [Adanur:115]

### H. Term 9: "the reinforcing material comprises a polymer material entangled within the polymer fibers of the fabric"

Silt Saver's position is that all terms other than "**entangled**" do not need to be construed and should be given their plain and ordinary meaning. In the interest of brevity, Silt Saver will not repeat FE/ACF's proposed construction, which spans a full page [Dkt. 44-2 at 25-27]. While the crux of the difference between the parties is over the construction of the term "entangled" (**Term 1**), which Silt Saver has addressed in detail earlier in this brief, FE/ACF do add an additional nuance by asking the court to construe the phrase "entangled within" by expanding it to "embedded, entrapped and entangled within." First, it seems improper to define "entangled within" by including "entangled within," i.e., the very term being defined. Second, "embedded" would seem

32

to be more of an alternative definition for "entangled" rather than an additional limitation. See '695 Patent 7:38-40 R000018, cited at Brookstein:33, 73, 93, 107, 123, 126 (virtually identical paragraphs), and the '695 Patent at 16:50-67, discussing how the scrim can be embedded[15] into the silt retention sheet.  This evidence further supports Silt Saver's proffered construction of "entangled" as being "connected and not readily separated." Silt Saver also points out that the construction FE/ACF's expert proposes differs from the construction FE/ACF propose, e.g., their expert proposes "embedded, entrapped **or** entangled," while FE/ACF propose "embedded, entrapped **and** entangled."  Contrast Brookstein:117, 129 with Dkt. 44-2 at p. 26 (**emphasis added**).  Thus, FE/ACF's expert adds the words "embedded" and "entrapped" as alternatives to the term "entangled" rather than as an additional limitation.

---

[15] Dr. Brookstein equates "embedded" (which can be done by interweaving as shown by '695 Patent 16:50-67) with "entangled" at Brookstein:117 ("embedded, entrapped, or entangled") Brookstein referred to the term "embedded" 13 times in his report. Brookstein:29, 31, 73, 93, 98 (twice), 107, 112 (twice), 117, 123, 126, and 129. Dr. Adanur agreed in his deposition that "embedded" was usually "entangled."  Adanur Dep:280:10-15; 281:1-4.  For an example where "embedded" is not "entangled" see Adanur Dep:278:18-280:5 (a pen can be embedded in a book but is readily removed by opening the book and therefore not entangled).

### I.   Term 10[16]: "the reinforced silt retention sheet . . . has an ultimate tensile strength ranging from about 100 lbs to 350 lbs in the warp direction"

Silt Saver's position is that no construction is needed.  FE/ACF do not seek to construe the term, but instead, ask the Court to import ASTM D-4632 into the claims and construe it as they have requested.  Silt Saver has addressed this in relation with **Term 2** and **Term 8** at pages 26 and 31-32; and notably, looking at the plain language of the claims, one thing stands out – the standard is not recited in the claim nor should it be imported therein for the reasons stated.

### J.   Term 12: "reinforcing material secured to the entangled polymer fibers"

This term presents the identical issues fully discussed in footnote 13 at page 30 – substituting "attached" for "secured" is not helpful to the jury.

### K.   Term 13: "said reinforcing silt retention sheet has . . . a mullen burst strength ranging from about 150 to 450 lbs per square inch"

Silt Saver's position is that the phrase requires no construction.  FE/ACF do not propose a construction.  Instead, FE/ACF seek to construe a term that is not found in the claim ["ASTM D-3786"] and then modify the application of the imported standard to require that the test procedure "is performed on a reinforced portion of the fabric." Importing and construing this standard and further applying it exclusively to the

---

[16] **Term 11** is the identical situation regarding ultimate tensile strength in the fill direction and, thus, will not be addressed separately.

reinforcing elements on the reinforced silt retention sheet is unsupported and

inappropriate as explained in the discussion of **Term 2** at page 26 and **Term 8** at pages

31-32.  Dr. Adanur further addressed this in his report.  Adanur:124.

## V.   CONCLUSION

For the reasons stated, the claims should be construed as Silt Saver proposes,

allowing the full scope of protection sought and obtained in the reissue patent.

Respectfully submitted this 8th day of May, 2017.

DAVIS, ZIPPERMAN, KIRSCHENBAUM &
LOTITO, LLP
                                                          WOMBLE CARLYLE SANDRIDGE
                                                          & RICE, LLP

*/s/ Kirk W. Watkins*
Kirk W. Watkins                                           D. Scott Sudderth
Georgia Bar No. 740550                                    Georgia Bar No. 690760
Tel: (404) 688-2000                                       Tel: (404) 962-7527
kwatkins@dzkl.com                                         ssudderth@wcsr.com

918 Ponce de Leon Avenue, NE                              271 17th Street NW, Suite 2400
Atlanta, Georgia  30306                                   Atlanta, Georgia 30363

                                                          **COUNSEL FOR PLAINTIFF**

## <u>LOCAL RULE 7.1 COMPLIANCE CERTIFICATE</u>

I hereby certify that the foregoing **SILT SAVER, INC.'S OPENING CLAIM CONSTRUCTION BRIEF** was prepared using the Times New Roman 14-point font, and otherwise conforms to the requirements of Local Rule 5.1(c) and 7.1.D.

This 8th day of May, 2017.

/s/ *Kirk W. Watkins*
Kirk W. Watkins
GA Bar No. 740550

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of May, 2017, a true and correct copy of the foregoing SILT SAVER, INC.'S OPENING CLAIM CONSTRUCTION BRIEF was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

*/s/ Kirk W. Watkins*
Kirk W. Watkins
GA Bar No. 740550

*Counsel for Plaintiff Silt Saver, Inc.*

WCSR 39365496v1

3