# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SILT SAVER, INC.,                  )
a Georgia corporation,             )
                                   )
      Plaintiff,              )
                                   )
v.                                 )   Civil Action No. 1:16-cv-01137-SCJ
                                   )
Denny Hastings d/b/a FRIENDLY      )
ENVIRONMENT;                       )
ATLANTIC CONSTRUCTION              )
FABRICS, INC., a Virginia          )
corporation, d/b/a ACF             )
ENVIRONMENTAL; and Kevin B.        )
Wolfe,                             )
                                   )
      Defendants.

---

## SILT SAVER, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

---

## <u>TABLE OF CONTENTS</u>

Table of Authorities……………………………………………………..…iii

Table of Exhibits, References, and Abbreviations…....…………………………iv

I.        Overview……………………………………………………………..1

II.       "entangled"………………………………………………………..3

           The Superfluous Fallacy……………………………………...13

III.      Strength Terms ("ultimate tensile strength")………………………21

IV.     "arranged spaced"……………………………………………24

V.      Conclusion…………………………………………………………..25

# Table of Authorities

Bicon, Inv. v. Straumann Co., 441 F.3d 945 (Fed. Cir. 2006) ............................... 15

Card-Monroe Corp. v. Tuftco Corp., Case No. 1:14-cv-292 (E.D. Tn. 2016)……..4

Cat Tech LLC v. Tube-Master, Inc., 528 F.3d 871 (Fed. Cir. 2008) .................... 15

e2Interactive, Inc. v. Blackhawk Network, Inc., 2017 U.S. App. LEXIS 8336 (Fed. Cir. May 11, 2017)………………………………………………………………6

Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc., 214 F.3d 1302 (Fed. Cir. 2000) ......................................................................................... 13, 14-15

Honeywell Int;l v. United States, 66 Fed. Cl. 400 (Fed. Cl. 2005)……………….18

Key Pharms. v. Hercon Lab. Corp., 161 F.ed 709 (Fed. Cir. 1998)……………...18

Malibu Boats, LLC v. Nautique Boat Co., 2015 WL 474878 (E.D. Tenn, Jan. 28, 2015)………………………………………………………………………………24

Nautilus, Inc. v. Biosig Instruments, Inc., 134 S.Ct. 2120 (2014)………………..24

Phillips v. ACH Corp., 415 F.3d 1303 (Fed. Cir. 2005)..................................... 6, 20

Smith v. Snow, 294 U.S. 1 (1935)……………………………………………...20

Uship Intellectual Props., LLC v. United States, 98 Fed. Cl. 296 (Fed. Cl. 2011)...6

Verizon Servs. Corp. v. Vonage Holdings Corp., 503 F.3d 1295 (Fed. Cir. 2007)   6

## TABLE OF EXHIBITS, REFERENCES, AND ABBREVIATIONS

| Exhibit or Dkt. # | Abbreviation | Description |
|---|---|---|
| Appendix B Part 1 to Dr. Adanur's Report – Reissue Patent RE42,695 Patent | '695 Patent CC:LL or CC:LL-CC:LL P00000XX | " '695 Patent" refers to the Reissue Patent-In-Suit, RE42,695. Where applicable, the name is followed by the column numbers and line numbers expressed in the format shown and the page number in the format shown |
| Appendix B Part 2 to Dr. Adanur's Report – the RE42,695 Prosecution History | 695PH at R0000XXX | "695PH" refers to the Prosecution History of the '695 Patent. Each page of that history is enumerated with 8 digits that begin with the letter "R" followed by the page number of the Prosecution History |
| | USPTO | United States Patent and Trademark Office |
| Dkt. 49 | Adanur:XX | Silt Saver's Expert Report filed on April 6, 2017, with the XX representing the paragraph number(s) |
| Dkt. 50 | Brookstein:XX | The Defendants' Expert Report filed on April 7, 2017, with the XX representing the paragraph number(s) |
| | Tbl | Table |
| Dkt. 65 | Adanur Dep:PP:LL | Deposition of Dr. Sabit Adanur taken by Defendants on April 25, 2017 – PP refers to page number and LL refers to line numbers |
| Dkt. 65-27 | Errata Dkt. 65-27 | Errata Sheet to Adanur Deposition |
| | re | regarding or related to |
| Exhibit A | | *Card-Monroe v. Tuftco Corp.,* Case No. 1:14-cv-292, Order decided April 5, 2016. |

Silt Saver, Inc. ("Silt Saver"), submits its responsive brief to Defendants' Claim Construction Brief.

## I.     Overview

The primary focus of Defendants' proposed claim constructions is to undo the very purpose behind the reissued patent and limit the claims of the '695 Patent to a "nonwoven" embodiment.  This objective can only be achieved by dishonoring the process by which the '695 Patent was re-issued and throwing out the judgment and decision of the USPTO, which approved the claims of the reissued '695 Patent—without limiting the claims to non-woven fabrics only.

Defendants' Claim Construction Brief obliquely recognizes the fallacy of its originally proposed construction of the term "entangled" - "to twist together or entwine into a confusing mass; snarl,[1]" by offering scant support (see Dkt 44-1 at p. 1; 44-2 at pp. 3, 13, 26, and 42).   In switching direction in its opening brief to define "entangled" as "nonwoven," Defendants ignore the primacy of intrinsic evidence over extrinsic evidence, as well as well-settled and controlling case authority.

---

[1] As Silt Saver demonstrated in its opening brief at page 11, the construction offered by Defendants would preclude application of the claims using the term "entangled" from applying to nonwoven, as well as woven, silt retention fences.

1

Despite Defendants' prior single definition of "entangled," they suggest each use of the term may mean something different and should be viewed separately in various contexts.  Defendants, however, never explain how the meaning differs in the different contexts used.  This argument merely illustrates that the construction/definition Defendants offer is incorrect, while Silt Saver's proposed construction of "connected and not readily separated" applies consistently and easily to each use.

Defendants' brief overtly imports selected embodiments and/or parts of the description into the claims, not only violating a key principle of claim construction to consider the entirety of the specification, but further confounding, if adopted, the central purpose for the Reissue.  Rather than repeat the authority, reasoning, and record citations contained in Silt Saver's opening brief demonstrating the fallacy of this approach, Silt Saver will put the citations, arguments, and "support" offered by Defendants into the context of the entirety of the approved Reissue Patent, whose primary announced and achieved purpose was to remove the term "nonwoven" as a claim limitation. (See PH at R000721-723).  The USPTO removed the "nonwoven" limitation after long, careful consideration and review, and it should not be reinserted to frustrate the core purpose of the reissue procedure and resulting patent.

2

Defendants take similar liberties with the constructions offered for other terms, frequently injecting additional language discussing a particular embodiment into the claims, while ignoring the specific, controlling claim language used, such as the term "ultimate."  This brief will expand on Silt Saver's arguments as to specific terms, as made in its opening brief, as appropriate.

## II.    "entangled"

Defendants' construction as proposed to this Court in the Parties' Joint Claim Construction Chart (see Dkt 44-1 at p. 1; 44-2 at pp. 3, 13, 26, and 42) presented a specific construction of this term—i.e., "**to twist together or entwine into a confusing mass; snarl**," and thus required attributes of "entangled" to include "snarl," along with "twist" and "entwine."  However, Defendants argue a different construction in their Brief.  Defendants' now claim that the term "entangled" means "nonwoven," and give little attention to the construction they submitted.  For example, the term "nonwoven" appears 52 times in Defendants' brief, while the terms "twist," "entwine," and "snarl" are mentioned in Defendants' Brief *just three times* each.  Defendants Brief at pages 3 and 5 (proposed construction); again at page 5 (bare reference to American Heritage College

Dictionary, p. 458 – without explaining why definition chosen).[2]  This lack of substantive support and argument for the Defendants' construction as submitted to the Court undermines Defendants' proposed construction of "entangled" as requiring "to twist together or entwine into a confusing mass; snarl" and supports Silt Saver's proposed construction.

Additionally, while Defendants are critical of Silt Saver's proposed construction, their brief offers no rationale or explanation for their currently proposed definition other than one bare reference to a college dictionary.  On the other hand, in Silt Saver's Opening Brief and Dr. Adanur's report and deposition explain at length the substantial basis for offering the construction "connected and not readily separated."  Adanur:64-68 and 71 (purpose of reissue/claim differentiation); 69 (analysis of the seven uses of a form of "entangle"); 70 (definition of "nonwoven" did not use "entangle"); 72 (no limitation to "entangled" in prosecution history); 73-75 (removal of "nonwoven" from claims and inclusion by patentee of both nonwoven and woven in the same species–accepted by

---

[2] When simultaneous opening claim construction briefs are exchanged courts frown on holding back reasoning for a proposed construction.  *See, e.g., Card-Monroe Corp. v. Tuftco Corp.*, Case No. 1:14-cv-292, Order decided April 5, 2016 (attached hereto and incorporated herein as **Exhibit A**).  Particularly egregious is offering a new construction for a term in the responsive brief, preventing the opposing party from addressing any issues raised.  *Id*.

examiner); 76 (patentee's inclusion of woven fabrics in support of claim referencing "entangled"); 77 (no limitations to woven in prosecution history); and 80-92 (consideration of extrinsic evidence); Adanur Dep:75:12-77:2.  To the extent there is a "vacuum," as Defendants argue at page 4, the vacuum is comprised of arguments by Defendants in favor of their claim construction for "entangled."

In their brief, Defendants postulate that "[e]very time the term '*entangled*' appears in the Specification, it is used in the context of a <u>nonwoven</u> fabric."[3] (emphasis by Defendants)  However, in each of the seven references quoted at pages 5-7 of Defendants' brief, the Specification is discussing example embodiments (rather than "the invention"[4]) and, when the context and the complete

---

[3] This is an incorrect conclusion as shown by the Silt Saver's Opening Brief (pp. 20-22), Dr. Adanur's Report (at Adanur:69), Dr. Adanur's deposition (corrected due to his reliance upon counsel for Defendants' incorrect representations) at Adanur Dep:90:9-91:1 (Errata Dkt. 65-27 at p. 5); 195:8-21 (Errata Dkt. 65-27 at p. 12); 307:9-14 (Errata Dkt. 65-27 at p. 19).  Defendants' Brief repeats this incorrect conclusion at pages 4 (second to last para.), 5 (second to last para.), and 7 (second to last para.), 7-8 (carryover sentence from page 7), and 19 (last para. before section 3.).  Repetition of an incorrect conclusion five times in Defendants' Brief does nothing to refute the careful analysis and explanations offered by Dr. Adanur.  Similarly, Defendants' Exhibit 4 is merely additional argument based on incomplete and erroneous information inserted in a form that circumvented Defendants' page limitations.

[4]      *Verizon Servs. Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295, 1305 (Fed. Cir. 2007); *see also Phillips,* 415 F.3d at 1323 (recognizing embodiments in a patent often are examples to teach a person of

language of the specification are considered, the term could be equally applied to a woven fabric in most of the references.  For example, as previously pointed out, the '695 Patent particularly describes the invention at several places as a silt retention fence that can include or "**be formed of a woven or nonwoven fabric**," and recites examples "**of a woven polypropylene fabric that may be suitable for use with the present invention**…" such as at 2:9-14, 2:39-49; 4:45-49, 6:13-29; 8:32-39; 9:40-45; and 10:42-44 (emphasis added).

In addition, the mechanical "entanglement" process cited by Defendants as referenced at '695 Patent 7:49-55 refers to one example for attaching the reinforcing material to the silt retention fence (not to the fibers within the nonwoven material).   Similarly, '695 Patent 17:1-6, the next reference included by Defendants, again refers to the entanglement or entrapment of the "fiberglass scrim 616," which is most frequently a woven material ('695 Patent 2:27-30); and likewise, their reference to the '695 Patent 18:37-43 is again addressing an

---

ordinary skill in the art how to make and use the invention, but should not limit the invention only to a specific embodiment).

*Uship Intellectual Props., LLC v. United States*, 98 Fed. Cl. 396, 407, 2011 U.S. Claims LEXIS 663, *20 (Fed. Cl. Apr. 28, 2011).  *See also e2Interactive, Inc. v. Blackhawk Network, Inc., 2017 U.S. App. LEXIS 8336, *16 (Fed. Cir. May 11, 2017)* ("disclosed embodiments are exemplary only and are non-limiting").  '695 Patent 7:1-4; 18:37-43; 24:51-56; 25:4-13.

embodiment/example method of entrapment and entanglement of the "fiberglass scrim 718" rather than discussing the nonwoven fabric.  Lastly, the Defendants further ignore the additional language of this passage, which specifically states that it is disclosing "*by way of example and not by limitation, one example of a system.*" Nevertheless, from these non-limiting examples Defendants seek to import the limitation into the claims that the silt retention screen fabric *must be* nonwoven.

Defendants offer no explanation or rationale that the entanglement of the systematically arranged and attached reinforcement scrim is "twisted" or "snarled" into a confusing mass so as to fit their proposed construction of "entangled."[5]  On the contrary, when the context of the use of the term is examined, it is readily apparent that, at most, the nonwoven fabric of the reinforced silt retention fence is merely exemplary of some depicted embodiments (not a limitation of the claims). Importantly, at the '695 Patent, 8:32-39, a first example of the invention as shown in Fig. 1 of the '695 Patent is discussed and is specifically described as:

> a reinforced silt retention sheet 10 generally includes a sheet, blanket, or web 12 comprising a geotextile fabric or other, similar water-permeable filter material to which reinforcement elements or belts 20 are attached in spaced series.  In this and other aspects of the present invention, the water-

---

[5] At the top of page 21, Defendants acknowledge that the reinforcing material (or in some cases scrim) is a "separately recited feature," which is supportive of Silt Saver's position that entangling the scrim in the fabric can be entangling a woven fabric.

permeable web of filter material 12 can be formed any suitable from **woven or nonwoven, natural or synthetic material**.  (Emphasis Added)

Thus, though ignored by Defendants, the "invention" described in the specification contemplates using "**any suitable woven or nonwoven**" or other materials as stated therein.  Lastly, in the final quote by Defendants at pages 6-7, the silt retention sheet formed by the needlepunching process is referred to as "a coherent nonwoven fabric."  Coherent is an antonym of "confused" and, therefore, use of this term further undermines rather than supports Defendants' construction.

Defendants also are incorrect in their assertion at page 7 that "[e]very time the word 'entangled' appears in the Specification it is part of the non-woven fabric species or a sub-species thereof."  The scrim, included in the above quoted references as being "entangled," is never limited in the '695 Patent specification or Prosecution History (i.e. the "intrinsic evidence") to being a nonwoven fabric.

Rather, as Dr. Adanur explained (and as shown by the more comprehensive extrinsic dictionary references) the term "entangled" encompasses "interlaced" and "interwoven."  He explains that people in the field are more likely to use the more specific terms of "interlacing" or "interwoven" in describing a woven fabric and those terms provide a more informative description of the interrelationship of the fibers rather than the more general term "entangled."  Adanur Dep:92:20-93:1;

8

95:12-18 (interlacing also applies to braiding); 107:2-19 (Dr. Adanur breaks down fabric forming methods and refers to his publication's use of the term "bonding" rather than "entangling" for nonwoven fabrics); 121:4-12 (interlacing is more specific thus more often used than entangling when describing a woven fabric); 148:11-16 ("interlacing is a form of entangling, more precise entangling").

Defendants also apply faulty reasoning when they turn to the prosecution history beginning at page 9. Defendants assume that the improved performance of patentee's new reinforced silt retention sheet as compared with the existing <u>non-reinforced</u> Type C silt retention fence mandated that the distinction must be that the Type C standard silt retention fences were woven and the embodiment of the invention for the comparison was nonwoven. However, were Defendants correct in this distinction as being the controlling difference, the Examiner would have never permitted the deletion of the term "nonwoven." Instead, as is clear from the abundant intrinsic evidence, a key, novel and distinguishing factor to the invention was the addition of the reinforcing elements. The reissue allowed the '695 Patent to claim this feature of the reinforcing elements as applied to both nonwoven and woven fabrics.[6] Defendants' efforts to backdoor a "nonwoven" limitation from the

---

[6] Defendants do not appear to attack the USPTO's decision in granting the reissue or the fact that, as indicated by the bracketing in the claims, the term/limitation of

9

embodiments initially used by the patentee is a specifically prohibited practice. See page 8 of Silt Saver's initial Brief and n. 3 at page 5 of this Brief.

Defendants further persist, at pages 10-11, in reliance upon the "Restriction Requirement" of the Examiner, which was not only was traversed by the patentee, **but was withdrawn** by the Examiner, as shown in Silt Saver's opening brief at pages 16-18. This effort is akin to reliance upon a legal finding of a lower court that is specifically reversed on appeal (or on reconsideration by the lower court itself). Persistence in this position by experienced patent counsel is contrary to the obligations of counsel to be forthright with the Court.

In an effort to attack Dr. Adanur's expert opinions, Defendants took over 300 pages of deposition testimony and selected isolated snippets to try to refute his opinions. Such citations, however, involve a number of instances where Dr. Adanur relied upon specific representations by counsel for Defendants made in questions posed, only to learn upon review that the representations actually were **incorrect**. [Errata Dkt. 65-27 at p. 5 re 49:19 and 49:23, at pp. 5-6 re 90:9-91:1, p.6 re 98:19, p. 9 re 133:12, p. 10 re 160:18 and 167:16-17, p. 11 re 189:16 and 190:1, p.12 re 195:8-21, p. 15 re 233:19 (interrupted response), p. 16 re 245:19-20

---

"nonwoven" was eliminated from the claims; instead they want this Court to ignore completely the result of the reissue and read a limitation of "nonwoven" into the claims.

and 251:11-15, p. 17 re 254:2-9 and 254:11, p. 18 re 275:9-12 and 277:2-13 and 279:21, and pp. 19-20 re 307:9-14 –18 total corrections required].  Due to the issues this generated as well as the technical nature of the questions and answers, 98 corrections were made to the deposition in the 20-page errata sheet [Dkt 65-27]. In this portion of Silt Saver's Brief, various erroneous conclusions, misrepresented testimony, and more comprehensive context will be offered on citations to Dr. Adanur's testimony made by Defendants.

Defendants also make the outrageous assertion at page 15 that "Plaintiff's own expert conceded that none of the extrinsic evidence he relied upon, or which was cited by Defendants' expert, supports his claim that multiple entangled polymer fibers exist in a woven fabric.  (Ex. 2, 198:12-18)."  The testimony reads:

> Q.  None of the technical documents cited by any or either of the experts in this case ever use the term "entangled" with respect to a woven material; correct?
> A.  But – well, it might be correct, but that dictionary also has technical terms in it too.

Dr. Adanur, however, explained at length that interlacing was a form of entanglement and that "interlacing" is frequently used to describe woven fabrics. Every time the term "interlaced" is used with a woven fabric in the technical publications, it supports Dr. Adanur's position that the fibers in woven fabrics are "entangled."  Adanur Dep:48:6-22; 82:20-83:4 (interlacing is a specific case of

11

entanglement); 91:2-22 ("interlacing is a subsection") (note Errata at p. 6 corrected line 21 to add "every" before "entanglement"); 92:4-9 (woven fabrics are entangled in a specific way - interlacing); 92:20-93:15 (Dr. Adanur used "interlacing" in referring to woven fabrics as a more specific form of entanglement); 95:12-18 (braiding is another type of interlaced fabric); 109:17-25 (explaining how interlacing entangles fibers in woven fabric); 113:25-114:13 ('695 Patent refers to woven fabrics as being interlaced - a form of entanglement); 116:25-117:3 (all interlacing is entangled); 121:4-18 (interlacing often used to describe woven fabrics because it is a better word, while entangling as a more general word often used to describe nonwoven fabrics); 134:12-136:21 (interlocking and interlooping are also subsets of entangling); and 137:12-22 (interlacing is mechanical entanglement).  See also Adanur:87; 88 (interwoven and intertwine are similar terms to interlace); 89 (support from *Chambers Science and Technology Dictionary*); 90 (support from *Shorter Oxford English Dictionary on Historical Principles*); 91; 92.

### *The Superfluous Fallacy*

Defendants' pose an argument that the term "entangled" as construed by

Dr. Adanur is superfluous.[7]  In two paragraphs and one selected quote from Dr. Adanur's deposition, Defendants argue that the term "entangled" as used in the claims is superfluous if given the meaning Silt Saver (and Dr. Adanur) propose as the most reasonable,[8] citing *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed. Cir. 2000).

Defendants' "*superfluous*" argument holds no weight given the construction Defendants proposed for "entangled."  First, Defendants' officially proposed construction of "to twist together or entwine into a confusing mass, snarl" is an effort to confine claims using the term to nonwoven fabrics (though, as Dr. Adanur demonstrated, Defendants' construction would not cover the coherent reinforced silt retention sheets of any of the embodiments).  Adanur Dep:77:3-78:21; 305:5-12; 305:16-25; and 306:21-307:4.  Second, Defendants' new assertion in their brief that "entangled" means "nonwoven" is subject to the identical superfluous assertion made against Silt Saver's construction.  If "entangled" means "nonwoven," then claim 25, which expressly (with USPTO approval) added a

---

[7] Though this is an intrinsic evidence argument, Defendants address it at pages 17-18 in their extrinsic evidence section.

[8] Dr. Adanur explained that the term would be helpful for the general public. Adanur Dep:111:1-21; 112:11-4.  See also Adanur Dep:113:9-12.  More significantly, the entire claim phrase "entangled polymer fibers" is not superfluous and describes the type of fibers entangled within the silt retention fence fabric.

"non-woven" limitation to claim 1, would be superfluous.  Third, at page 20, Defendants argue for the insertion of the terms "embedded, entrapped and entangled" to replace the single term "entangled."  When the underlying rationale offered by Dr. Brookstein for this insertion is examined (Brookstein:117), he joined the terms by the conjunction "**or**," equating the three terms, rather than using "and."  Therefore, on the one hand, Defendants argue the term "entangled" would be superfluous with the Silt Saver construction, while on the other they offer a construction of three terms their expert says mean the same thing in a string addition.  Thus, when Defendants use three terms with the same meaning in a row, it supposedly adds clarity, while Silt Saver's alleged use of two terms with the same meaning[9] is superfluous and prohibited.  Therefore, Defendants' attack on Silt Saver's construction is contradicted by the very arguments they make to add "embedded" *and* "entrapped."

Next, Silt Saver examined the authority on which Defendants rely; an informative exercise.  Defendants cite *Eleckta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed. Cir. 2000), as "refusing to adopt construction that would render claim language superfluous."  However,

---

[9] As Silt Saver will address shortly, upon examination the term "fabric" and the term "entangled" do not mean the same thing, although all fabric fibers are entangled.  Adanur Dep:78:17-21; 94:15-95:4.

examination of the passage shows that the Court required that "between" be given its ordinary meaning not allowing the patentee to ignore the range (30 to 45 degrees) specifically identified in the patent claim.  This accordingly was not a situation such as the present case where an infringer sought to add a limitation from the specification into the claim, but instead was a situation where patentee sought "to drop" a term recited in the claim in order to achieve its objective of broader coverage.

Similarly, in *Bicon, Inv. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006), the patentee was unable to escape a detailed definition of abutment in the claim by arguing it was in the preamble and thus did not limit the claim.  Finally, in *Cat Tech LLC v. Tube-Master, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008), the Court refused to render an "important claim limitation" "functionally meaningless."  These cases are readily distinguished from the situation here, where the patentee openly and persistently argued for **the removal** of the "nonwoven" limitation, explicitly removed it with the ultimate blessing of the Examiner and a Patent Office appeal that resulted in the reissued patent claims, and now seeks to enforce his reissued patent in conformance with the reissued claim language and his representations throughout the process.  None of the above courts, if faced with the prosecution history, specification, and claims of this case, would add

15

"nonwoven" as a limitation to the '695 Patent claims based solely on the word "entangled."

Having shown that all fabrics are made of entangled fibers and that a construction limiting "entangled" to only "nonwovens" would render claim 25 entirely superfluous, Silt Saver turns to the claim language itself. The pertinent element of claim 1 reads as follows:

> A flexible, water permeable, [nonwoven] fabric comprising a plurality of entangled polymer fibers *and having a thickness of about 0.1 mm to about 5mm*[10]

In examining the claim, if nonwoven had not been removed, interpreting "entangled" as "nonwoven" would make "entangled" superfluous. It thus makes no sense that after the term "nonwoven" is removed, "entangled polymer fibers" somehow acts to exclude woven or any other fabrics.

Defendants' argument that Silt Saver's construction of "entangled" to mean "connected and not readily separated" would result in "fabric" and "entangled" meaning the same thing likewise is incorrect. Even though, as Dr. Adanur explains, all fabrics are comprised of entangled fibers, the two terms "fabric" and "entangled" are not the same. Fabric is the overall resulting combination of the

---

[10] Language in bold brackets "nonwoven" was removed in the reissue, while language in italics was added.

16

fibers, while "entangled polymer fibers" refers to the composition of the reinforced silt retention fence.  A fabric can be composed of entangled natural fibers, entangled polymer fibers, entangled strands of other materials, or entangled strands of a combination of fibers.  It is not the fabric that is entangled, but rather the fibers that compose it.  By describing the fabric as comprised of "entangled polymer fibers," the patentee simply described the reinforced silt retention fence as having polymer fibers that are entangled.  Thus "entangled" must be considered in the context in which it is used – with polymeric fibers.  In each use, it is a further descriptor of the fabric and, in every instance, includes the additional limitation that the fibers are polymer (or polymeric) fibers.  Therefore, the term construed in accordance with Silt Saver's proposal is not superfluous (as the entire limitation is "entangled *polymer* fibers"), whereas construing "entangled" to be limited to "nonwoven" is scientifically incomplete and incorrect, is in conflict with the intrinsic evidence, and would make claim 25 superfluous.

In examining the patentee's use of the term "entangled" in the claims themselves, it also is helpful to review claims 18, 23, and 27, where it is the reinforcing material (often a woven fabric as understood by one of ordinary skill in

the art[11]) that is entangled within the polymer fibers of the fabric.

### Extrinsic Evidence Relating to Entangled

Defendants' purpose in focusing on extrinsic evidence while avoiding the intrinsic evidence is to arrive at a claim construction clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history – the written record of the patent. *Honeywell Int'l v. United States*, 66 Fed. Cl. 400, 424, 2005 U.S. Claims LEXIS 165, *61-62 (Fed. Cl. 2005), *quoting Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).  Their attempt to exclude the central aspect of the invention that the patentee filed for and ultimately was successful in correcting through the reissue process (broadening coverage to woven silt retention sheets) must fail.

In addressing the extrinsic evidence, Defendants ignore the elephant in the room:  comprehensive dictionary definitions offered by Dr. Adanur, including "interwoven" and "interlace" as definitions of "entangled." Adanur:88

---

[11] '695 Patent 6:63-7:1 (scrim includes, but is not limited to, "woven or nonwoven polymeric materials"); '695 Patent 7:17-19 ("scrim may have any suitable ... weave").  Similarly, though the term "web" or "webs" is often used in the patent in relation to nonwoven fabrics (even in the definition of "'nonwoven' material or fabric or web" as quoted from '695 Patent 4:56-63 at page 7 of Defendants' Brief), the patentee took care to state that "The webs may be formed of woven and/or nonwoven materials and constructed to allow water to pass through, while helping to prevent the passage of silt and/or debris therethrough."  '695 Patent 2:42-45.

("intertwine" at p. 44) ("intertwined" at p. 45) ("interwoven" twice on p. 45); 90

("interlace").  None of these definitions [all omitted from the single short reference

from a collegiate dictionary offered by Dr. Brookstein – Brookstein:67 (footnote

25)] are consistent with the construction offered by Defendants.  A woven fabric

obviously is interlaced, interwoven, and entwined, and these terms are commonly

used by dictionaries to define entangled.

Also, while interlacing as a form of entangling may be more descriptive of a

woven fabric [Adanur:87; see Adanur Deposition cites at pages 6-9], Defendants

start from the erroneous premise that interlacing and entanglement are mutually

exclusive[12] and then simply perform a counting exercise of the number of times

entangle is used to describe a nonwoven fabric and interlacing is used to describe a

woven fabric.  This bears resemblance to the breadth of the term "leaf."  Does that

term cover pine needles?  While the answer is "yes," if you canvassed the literature

---

[12] Dr. Adanur explains that interlacing is a subset of entangled - a more descriptive
term for woven fabrics.  Both woven and nonwoven fabrics are entangled, but,
between the two, only woven fabrics are interlaced.  Adanur Dep:91:13-22.
Although Defendants criticize Dr. Adanur for "creating the definition," as the
author of multiple books on the topic and a college professor who has taught the
subject to students for 25 years, Dr. Adanur is an established and eminent expert in
the field, ideally positioned to explain a simple term to the Court and jury.  On the
other hand, Defendants rely on a less than thorough college dictionary as the sole
support for their limiting definition.

referring to pine trees, you would be hard pressed to find the term "leaf"[13] used rather than "needle."  The key is to afford the patentee the full protection of his actual invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321-22 (2005), *citing Smith v. Snow*, 294 U.S. 1, 14 (1935) ("if the claim were fairly susceptible of two constructions, that should be adopted which will secure to the patentee <u>his actual invention</u>" – emphasis in *Phillips*).  Again, Defendants seek to backdoor the conclusion that the "actual invention" was a "nonwoven" reinforced silt retention fence, but the prosecution history, specification, and claims of the '695 Patent – approved by the USPTO in the reissue – clearly show otherwise.  It is undeniable that the "nonwoven" limitation was explicitly removed from the claims.  Despite this undeniable fact, Defendants' proffered construction ("to twist together or entwine into a confusing mass; snarl") would preclude the patent from covering even the preferred embodiments by ignoring the explicit statements in the patent and file history and, secondarily, restricting the word "entangled" to only include "nonwoven" fabrics would deprive the patentee of protection for the actual invention for which the reissue was sought and obtained.

---

[13] A pine tree's foliage is like the "woven fabric" better described by the more specific term "interlacing" than by "entangled" or in the case of the foliage of a pine tree – "pine needles."  See Adanur Dep. 120:23 – 121:12 quoted at Defendants' Brief p. 17.

Silt Saver submits that the exhaustive string cites to the extrinsic literature by Defendants, regardless of their showing of a relative frequency with which "entangled" is used with nonwoven fabrics, are not controlling over the clear intrinsic record and fall short of establishing that "interlacing" is not entangled.

### III.   Strength Terms ("ultimate tensile strength")

Defendants confuse the methodology of the ASTM D-4632 standard with the recitation of the single point where product failure begins.  A silt fence is a dam designed to hold back water and debris to environmentally protect the landscape downstream.  And like a dam, it loses functionality once the weakest point is breached.  It makes no difference if one side of a dam (or nearby sections of silt fence) retain their strength, if the purpose of the dam has failed – water (and debris) escape.  See Adanur Dep:204:22-205:12; Adanur:95.

By insisting on inclusion of a technical application of a standard designed to measure relatively homogenous materials,[14] which is **not** recited in the claim, Defendants destroy the concept of the invention and the purpose of its limitations. Blindly applying an average measurement to a composite product by insisting on measuring (and only measuring the braces/reinforcement) would not be common

---

[14] Adanur:96.

sense to one of ordinary skill in measuring the functionality and purpose of the invention. It is unnecessary to further address the baseless proposal by Defendants that only the reinforced elements be measured to determine the strength of the reinforced silt retention sheet.

As previously pointed out, the plain language of the claims calls for an "ultimate tensile strength." The claims do not recite or require the measuring process of ASTM D-4632[15] to be used for this measurement, nor do they call for an average strength. One of ordinary skill in the art would understand that, in order to be meaningful, the ultimate strength of the composite product is the strength of its weakest portion – that is the point where the product will fail (*e.g.,* the dam will break), losing the ability to perform its intended purpose.

A blind application of a complex standard not called for by the express language of the claims would confuse and mislead the jury, precluding expert testimony as to how the ultimate tensile strength limitation stated in the claim as written should be understood. Given the case law prohibition against reading a limitation into the plain language of the claims where it is not recited or otherwise

---

[15] Defendants argue that ASTM D-4632 must be summarized to the jury in the claim construction process. Far better to allow the experts to explain how they applied the test and how they came up with the results obtained. See Adanur:95-109 (9 pages of analysis involving ASTM D-4632, most of which is not captured – and might be erroneously precluded - by the proposed construction of Defendants).

included, Defendants' proposal is legally incorrect; and thus this standard should not be artificially introduced as an additional limitation.

Defendants also are less than candid when they propose that Dr. Adanur "conceded that: (1) ultimate tensile strength must be measured at a reinforced portion of the sheet (Ex. 2, 233:21-234:5)." Defendants omit the testimony (including the added portion in italics) provided at page 232:23-233:19 as follows:

> Q. And despite the fact that it says, Wherein, the reinforced silt retention sheet has an ultimate tensile strength ranging from about 100 pounds to 350 pounds in the warp direction, you believe that that requires that the reinforced silt retention sheet be tested only at the nonreinforced area?
>
> A. Well, I believe that part of the wording in this claim was from the earliest application, which was for the nonwoven product. And then it was changed, and then "nonwoven" was taken out. Somehow, that was not clarified in the claim language, because that wording is definitely for Figure 6. I [~~guarantee~~] *believe* that, you know, it is for Figure 6.
>
> Again, I think when they made the change and took "nonwoven" out, they - - I don't know. I don't want to say they forgot, but maybe they should have also modified that claim too, that it - - *although the claim is still valid for both woven and nonwoven fabrics. The concept is to test the earliest point of failure whether woven or nonwoven. That means that there should be some area between the jaws with only nonreinforced fabric.*

Defendants seek to read the word "ultimate" out of the claims and propose that no one of ordinary skill in the art would understand otherwise. One of ordinary skill in the art would hardly apply by rote ASTM D-4632 to arrive at an

23

average strength.  Recognizing that the test was designed for fabrics of a uniform structure and consistency, one of ordinary skill in the art would understand that the procedures for testing using ASTM D-4632 should be utilized, but using common sense the earliest point of failure should be adopted rather than an average figure. An understanding of the purpose of the patent by one of ordinary skill in the art would dictate the reasonable and necessary use of the ASTM D-4632 testing procedure to find the earliest point of failure.

## IV.    *"arranged spaced"*

Defendants fail to apply the words as commonly understood by even a high school graduate, arguing the terms represent a typographical error and, therefore, are indefinite.  Defendants argument runs counter to *Malibu Boats, LLC v.Nautique Boat Co., Inc.*, 2015 WL 474878, at *13 (E.D. Tenn. Jan. 28, 2015) ("'absolute precision' is not required and 'some modicum of uncertainty . . . is the price of ensuring the appropriate incentives for innovation.'") (*quoting Nautilus, Inc. v. Biosig Instruments, Inc.*, ___ U.S.___, 134 S.Ct. 2120, 2128-29 (2014)). Defendants' argument that the fact "arranged spaced" is not a term of art, and not defined in the specification, runs afoul the application of common sense and fails to introduce the "reasonable debate" or absence of "reasonable certainty" required by their citation to *Nautilus*.

The other terms for which construction was disputed were addressed in Silt Saver's opening brief.

## V.    Conclusion

Defendants have strung together a series of extrinsic evidence references and characterizations of the patent and prosecution history aimed at defeating the announced purpose of the reissue application by imposing features of the disclosed embodiments into claims that specifically omitted them.  The arguments offered do not withstand the logic accepted by the examiner, the deletion of "nonwoven" from the claims, or settled principles of claim construction.  The Court should adopt constructions that afford the patentee the full scope of his invention.

Respectfully submitted this 30th day of May, 2017.

DAVIS, ZIPPERMAN,
KIRSCHENBAUM & LOTITO, LLP

_/s/ Kirk W. Watkins_
Kirk W. Watkins
Georgia Bar No. 740550
Tel: (404) 688-2000
kwatkins@dzkl.com

918 Ponce de Leon Avenue, NE
Atlanta, Georgia  30306

WOMBLE CARLYLE
SANDRIDGE & RICE, LLP

D. Scott Sudderth
Georgia Bar No. 690760
Tel: (404) 962-7527
ssudderth@wcsr.com

271 17th Street NW, Suite 2400
Atlanta, Georgia 30363

**COUNSEL FOR PLAINTIFF**

25

## <u>LOCAL RULE 7.1 COMPLIANCE CERTIFICATE</u>

I hereby certify that the foregoing **SILT SAVER, INC.'S OPENING CLAIM CONSTRUCTION BRIEF** was prepared using the Times New Roman 14-point font, and otherwise conforms to the requirements of Local Rule 5.1(c) and 7.1.D.

This 30th day of May, 2017.

/s/ *Kirk W. Watkins*
Kirk W. Watkins
GA Bar No. 740550

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2017, a true and correct copy of the foregoing SILT SAVER, INC.'S OPENING CLAIM CONSTRUCTION BRIEF was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

/s/ Kirk W. Watkins
Kirk W. Watkins
GA Bar No. 740550

*Counsel for Plaintiff Silt Saver, Inc.*

3