## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **SILT SAVER, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action No. 1:16-cv-01137-SCJ** |
| **DENNY HASTINGS d/b/a** ) | |
| **FRIENDLY ENVIRONMENT,** ) | |
| **ATLANTIC CONSTRUCTION** ) | |
| **FABRICS, INC., a Virginia** ) | |
| **corporation, d/b/a ACF** ) | |
| **ENVIRONMENTAL, and KEVIN** ) | |
| **B. WOLFE** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

I. INTRODUCTION .................................................................................1

II. ARGUMENT ........................................................................................2

    A. By Retaining the Phrase "Plurality of Entangled Polymer Fibers" in Claims 1 and 23 During the Reissue Proceeding, the Patent Owner Restricted the Claims to Fabrics Made from Entangled Polymer Fibers. ...........................................................2

    B. The Patent Owner's Purported "Intent" When Deleting the Word "Nonwoven" From Claims 1 and 23 is Trumped by the Fact That the Phrase "Entangled Polymer Fibers" Was Retained in Those Claims. ...........................................................5

    C. Plaintiff's Reliance on Claim Differentiation is Also Trumped by the Specification and Prosecution History of the '695 Patent..............................................................................7

    D. Plaintiff's Construction of "Entangled" Improperly Reads "Entangled" Out of Claims 1 and 23. ...........................................9

    E. The USPTO Made Clear that "Entangled Polymer Fibers" (as Recited in Claims 1 and 23) Includes *Non-Woven Fabrics*, and "Polymer Fibers" (as Recited in Claims 20 and 31) Includes Both *Woven* and *Non-Woven Fabrics*. .......................................11

    F. Plaintiff Mischaracterizes the Examiner's Reason for Withdrawing the Restriction Requirement. ...............................13

    G. Plaintiff's Argument that Defendants' Claim Construction Would Not Cover Any Embodiment Disclosed in the Specification of the '695 Patent is Demonstrably Wrong. .......................15

H. Plaintiff Has Failed to Provide Any Meaningful Citations to the Specification of the '695 Patent or its Prosecution History to Support its Construction of "Entangled". ...............................................17

I. Plaintiff's Late Attempt to use US Patent 4,069,564 as Extrinsic Evidence Should be Rejected. ....................................................20

J. Plaintiff's Attempt to Distance itself from ASTM D-4632 in the Construction of "Ultimate Tensile Strength" Fails. ...........................21

III. CONCLUSION ...............................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1141 (Fed. Cir. 2011) ...................................................................................10

*ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) .................10

*Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1337 (Fed. Cir. 2011).......................................................................................................7

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,* 672 F.3d 1335, 1348 (Fed. Cir. 2012) ....................................................................................10

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) ......................................................................................3

*Autogiro Co. of Am. v. United States,* 384 F.2d 391, 404 (Ct.Cl.1967) ...................7

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249 (Fed. Cir. 2010) .......................................................................................9

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006)..........................9

*Biogen, Inc. v. Berlex Labs., Inc.,* 318 F.3d 1132, 1139 (Fed.Cir.2003)...............5, 6

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed.Cir.2000) ......................................................................10

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1581 (Fed. Cir. 1996) ...........................................................................3

*Fenner Investments, Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1327 (Fed. Cir. 2015)...........................................................................................7

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009).......................................................................................................8

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003) ...................................................................10

*Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) ................................ 8, 9

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) ........................................................................ 7, 8

*Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) .................... 6

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ................................................................................................... 18

**Statutes**

35 U.S.C. § 112 ................................................................................................ 2

# I. <u>INTRODUCTION</u>

Despite Plaintiff's attempt to characterize Defendants' claim constructions as imported from extrinsic evidence, Defendants' have shown that their proposed constructions are taken directly from the claims, the Specification and the Prosecution History of the '695 Patent, and that the extrinsic evidence cited merely adds further support for their proposed constructions. Conversely, Plaintiff's proposed constructions lack support in the intrinsic record, and in many cases are undermined by its own expert.

Plaintiff's Opening Brief refers to the '695 Patent as a "Pioneering Patent" that combined a silt retention fabric reinforced with one or more reinforcing elements. (Doc. 62 at pp. 3-4)  Whether a patent is "pioneering" is not relevant to claim construction, and perhaps only relevant at a later date on the issue of infringement under the doctrine of equivalents.  Furthermore, to the extent that Plaintiff relies upon its expert to purportedly establish that Plaintiff's silt retention sheet represents a "pioneering" invention, he testified that, although he may have extensive experience with fabrics, he has no particular experience in the specified field of silt retention sheets. (Doc. 49, ¶ 3; Doc. 65, 18:7-12)

## II. <u>ARGUMENT</u>

Plaintiff offers no valid explanation as to why the term "entangled polymer fibers" was retained in certain claims during the Reissue Proceeding, despite the fact the word "entangled" only appears in the Specification in the context of nonwoven fabrics.  There is only one reasonable explanation – those claims are limited to fabrics including multiple polymer fibers entangled with each other in a nonwoven manner.

Similarly, although Plaintiff criticizes Defendants' proposed construction of the claim terms that include the phrase "ultimate tensile strength", as limited to include ASTM D-4632, it is the only tensile strength test used in the Specification to describe the tensile strength of the claimed reinforced silt retention sheet.

**A.  By Retaining the Phrase "Plurality of Entangled Polymer Fibers" in Claims 1 and 23 During the Reissue Proceeding, the Patent Owner Restricted the Claims to Fabrics Made from Entangled Polymer Fibers.**

The patent owner removed the word "nonwoven" from Claims 1 and 23 during the Reissue Proceeding, but did not remove the phrase "entangled polymer fibers" from those claims.  As a result, competitors and the public at large are entitled to rely upon the fact that a fabric must include <u>entangled polymer fibers</u> before it can possibly be within the scope of Claim 1 or Claim 23.  This conforms to the fair notice function of patent claims consistent with 35 U.S.C. § 112.

In *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996), the Federal Circuit construed the claim term "varies between" as having the narrower meaning proposed by the accused infringer, stating that, "were we to allow [the patentee] successfully to assert the broader of the two senses of 'between' against [the accused infringer], we would undermine the fair notice function of the requirement that the patentee distinctly claim the subject matter disclosed in the patent from which he can exclude others temporarily."

In *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1581 (Fed. Cir. 1996), the Federal Circuit construed the term "pusher assembly", and citing to *Athletic Alternatives*, held that "a patent claim may be interpreted only as broadly as its unambiguous scope."   The Federal Circuit found that the term "pusher assembly" unambiguously described only a portion of the embodiments disclosed in the specification. *Id.*

In this case, to the extent that Plaintiff is attempting to construe the phrase "entangled polymer fibers" to cover woven fabrics, such a construction is contrary to the Specification and Prosecution History of the '695 Patent, and is contrary to the extrinsic evidence of record including multiple textbooks that consistently describe and illustrate entangled fibers in nonwoven fabrics and never in woven fabrics.

3

Plaintiff's proposed construction would undermine the fair notice function of patent claims by ignoring the fact that Plaintiff retained the word "entangled" in Claims 1 and 23. When the public reads independent Claims 1 and 23 of the '695 Patent, they are put on notice that those claims are restricted to fabrics that have <u>entangled</u> polymer fibers. In contrast, when the public reads independent Claims 20, 28 and 31 of the '695 Patent, they are put on notice that there is no such restriction regarding the fabrics that are recited in those claims.

As set forth in detail in Defendants' Opening Claim Construction Brief, those skilled in the art would clearly understand that fabrics containing entangled polymer fibers are within the species of nonwoven fabrics. The Specification and Prosecution History of the '695 Patent describe entangled polymer fibers as being within the nonwoven fabric species. The extrinsic evidence of record, including textbooks authored by Plaintiff's expert, corroborate the intrinsic evidence, and further demonstrate that fabrics made from entangled polymer fibers fall within the nonwoven fabric species.

Defendants' proposed construction of the phrase "plurality of entangled polymer fibers" specifies that the polymer fibers are arranged <u>in a nonwoven manner</u>, and is intended to clarify for the jury what is understood by those skilled

in the art – fabrics with entangled polymer fibers fall <u>inside the nonwoven fabric species</u> and <u>outside the woven fabric species</u>.

**B.     The Patent Owner's Purported "Intent" When Deleting the Word "Nonwoven" From Claims 1 and 23 is Trumped by the Fact That the Phrase "Entangled Polymer Fibers" Was Retained in Those Claims.**

Plaintiff's intention to broaden the claims to cover woven and non-woven materials does not overcome the ordinary meaning of the claims, Specification, and Prosecution History.

During the Reissue Proceeding, the patent owner stated that the claims had been amended to remove the term "non-woven" as a limitation.  Although that belief may be accurate for independent Claim 20, such a belief is not supported by the intrinsic record with respect to independent Claims 1 and 23.  On their face, each of independent Claims 1 and 23 still recite that the fabric must comprise "entangled polymer fibers".  Courts must "view the prosecution history not for the examiner's or the applicant's subjective intent, but as an official record that is created in the knowledge that its audience is not only the patent examining officials and the applicant, but the interested public."  *Biogen, Inc. v. Berlex Labs., Inc.,* 318 F.3d 1132, 1139 (Fed.Cir.2003)

In *Biogen, Inc.*, the Plaintiff argued that the narrower construction of a claim term was only a preferred embodiment, and that it was incorrect to limit the claims to the preferred embodiment.  *Id.* at 1135.  However, the Federal Circuit reviewed

the specification and prosecution history of the patent, to determine that an objective reading of the prosecution history showed that the Examiner recognized that the only supportable scope of the claims was for the narrower construction. *Id*.

In *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005), the Plaintiff attempted to broaden the scope of a claim limitation found in a claim that was added in a preliminary amendment.  The Applicant stated that it added claims "to more fully cover the scope of the invention."  *Id*. at 1370.  Thus, the Plaintiff argued that the claim term should be construed broadly because the prosecution history showed that the Applicant added the claim "to more fully cover the scope of the invention," and that the Applicant would not have added the claim if it was of the same scope as another claim.  *Id*. at 1374-75.  However, after a review of the specification and prosecution history, the Court determined that Plaintiff's argument inappropriately emphasized Applicant's subjective intent.  *Id.* at 1375.

In the present case, the patent owner failed to remove the phrase "entangled polymer fibers" from Claims 1 and 23.  As a result, after an objective analysis of the Specification and Prosecution History, Plaintiff's subjective intent cannot overcome the overwhelming weight of the intrinsic evidence, which dictates that

the recitation of "<u>entangled</u> polymer fibers" in Claims 1 and 23 restricts those claims to fibers that are arranged <u>in a nonwoven manner</u>.

## C. Plaintiff's Reliance on Claim Differentiation is Also Trumped by the Specification and Prosecution History of the '695 Patent.

Claim differentiation cannot overcome a contrary construction dictated by the written description and prosecution history. "Claim differentiation is a guide, not a rigid rule." *Autogiro Co. of Am. v. United States,* 384 F.2d 391, 404 (Ct.Cl.1967). Claim differentiation is not a conclusive basis for construing claims and the specification may override its effect. *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1337 (Fed. Cir. 2011). Claim differentiation "cannot enlarge the meaning of a claim beyond that which is supported by the patent documents, or relieve any claim of limitations imposed by the prosecution history." *Fenner Investments, Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1327 (Fed. Cir. 2015).

"Any presumption created by the doctrine of claim differentiation 'will be overcome by a contrary construction dictated by the written description or prosecution history.'" *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). In *Retractable Techs.*, the patent contained an independent claim that recited a "body," with a dependent claim that limited the "body" to a "one-piece body". *Id*. at 1304-05. Thus, under the claim differentiation presumption the claims could be read to imply that "body" is not

limited to a one-piece structure. *Id*. at 1305. However, the specification indicated that the claimed "body" referred to a one-piece body. *Id*. The Federal Circuit examined the specification and prosecution history and determined that a construction of "body" that limits the term to a one-piece body is required to tether the claims to what the specification indicated the inventor actually invented. *Id*.

In *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009), the patent contained an independent claim that recited a "spike," with a dependent claim reciting "wherein said end of said spike is pointed". Thus, under the claim differentiation presumption, the claims could be read to imply that "spike" was not limited to a spike with a pointed end. *Id*. However, after looking to the specification and prosecution history, the Court determined that the spike was consistently referred to as a pointed instrument and that the dependent claim was added to the patent years after the original filing. *Id*. The Court determined that "spike" must be limited to an elongated structure having a pointed tip. *Id*.

In *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005), the patent contained an independent claim that recited a "board," and a similar independent claim that limited the "board" to a "wood decking board". Thus, the claim differentiation presumption suggested that the difference in the use of terms was significant and that a "board" should not have to only be wooden. *Id*. However,

8

the Court examined the term "board" in the context of the written description and prosecution history of the patent, and because "board" consistently referred to something wooden, the Court concluded that "board" must be limited to wood cut from a log. *Id*. at 1143-46.

In the present case, independent Claim 1 of the '695 Patent recites a fabric comprising "a plurality of entangled polymer fibers," with dependent Claim 25 reciting that the fabric is "non-woven". Although under the claim differentiation presumption, the claims *could* be read to imply that "fabric comprising a plurality of entangled polymer fibers" is not limited to a non-woven fabric, the Specification and Prosecution History of the '695 Patent contradict such a construction, and the extrinsic evidence of record also contradicts such a construction, as discussed in detail in Defendants' Opening Brief.

## D.   Plaintiff's Construction of "Entangled" Improperly Reads "Entangled" Out of Claims 1 and 23.

A dominant claim construction principle is that claims must be "interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 950 (Fed. Cir. 2006). A construction that reads terms out of the claim violates well-established Federal Circuit law, as all words in a claim should be construed to have meaning. *Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249 (Fed. Cir. 2010) ("Claims must be

interpreted with an eye toward giving effect to all terms in the claim."); *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,* 672 F.3d 1335, 1348 (Fed. Cir. 2012) (reversing district court's construction where it "effectively reads the term 'free' out of the limitation"); *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1141 (Fed. Cir. 2011) (affirming interpretation where competing proposal would render claim term meaningless); *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003) ("district court erred by improperly broadening the scope of the claimed function by 'reading out' the limitations contained in the claim language").

Independent Claims 1 and 23 recite the phrase "<u>entangled</u> polymer fibers", whereas independent Claims 20 and 31 recite "polymer fibers". The presence of the word "entangled" in Claims 1 and 23 must mean something.[1]

"Entangled" is used as an adjective to modify "polymer fibers" in Claims 1 and 23.  As set forth in Defendants' Opening Brief, the context in which the word "entangled" is used in the claims must be considered.  *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).  When the phrase "entangled polymer fibers" is read: (a) in context in Claims 1 and 23; (b) in view of the fact that "entangled" does not appear in Claims 20 and 31; and (c) in view of the fact the

---

[1] *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed. Cir.2000) (refusing to adopt construction that would render claim language superfluous).

word "entangled" is used only in reference to nonwoven fabrics and not in reference to woven fabrics in the Specification, a proper construction must give weight to the word "entangled" in the phrase "fabric comprising a plurality of entangled polymer fibers." Defendants' proposed construction follows this methodology.

**E.     The USPTO Made Clear that "Entangled Polymer Fibers" (as Recited in Claims 1 and 23) Includes *Non-Woven Fabrics*, and "Polymer Fibers" (as Recited in Claims 20 and 31) Includes Both *Woven* and *Non-Woven Fabrics*.**

It is undisputed that the USPTO Examiner made the following statement at the beginning of the Reissue Proceeding (Doc. 63-8, p. 2):

> 1.     This application contains claims directed to the following patentability distinct species:
>
>        Species A, the embodiment of a reinforced silt retention sheet comprising a plurality of entangled polymer fibers, inclusive of non-woven fabrics; and
>
>        Species B, the embodiment of reinforced silt retention sheet comprising a plurality of polymer fibers, inclusive of woven and non-woven fabrics.
>
>        The species are independent or distinct because claims to the different species recite the mutually exclusive characteristics of such species.  In addition, these species are not obvious variants of each other based on the current record.

To put the Examiner's statements regarding "entangled polymer fibers" and "polymer fibers" into context, when the patent owner filed its initial Amendment in the Reissue Proceeding (Exhibit 1 hereto, June 12, 2009 Preliminary Amendment,

pp. 2-7), independent Claims 1 and 23 included the more specific term "entangled polymer fibers" when describing the fabric of the reinforced silt retention sheet, whereas independent Claims 20 and 28 included the more general term "polymer fibers" when describing the fabric.  Faced with different language used in the different claims, the Examiner identified "Species A" and "Species B".  According to the Examiner, the reinforced silt retention sheet of "Species A" comprised a "plurality of **entangled polymer fibers**, inclusive of **non-woven fabrics"**; and the reinforced silt retention sheet of "Species B" comprised "a plurality of **polymer fibers**, inclusive of **woven and non-woven fabrics"**.

The Examiner's classification of reinforced silt retention sheets comprising "entangled polymer fibers" as including "non-woven fabrics" is a basis for Defendants' proposed construction that a fabric comprising a **plurality of entangled polymer fibers** has fibers that are arranged with each other **in a nonwoven manner.**

Because Claims 1 and 23 recite fabrics specifically comprising **"entangled polymer fibers"**, those claims fall within the Examiner's "**non-woven fabrics"** species ("Species A").  In contrast, because Claims 20 and 31 recite fabrics more generally comprising "**polymer fibers**", those claims fall with the Examiner's "**woven and non-woven fabrics**" species ("Species B").

12

The Examiner's distinction between fabrics comprising "entangled polymer fibers" as including "non-woven fabrics", and fabrics comprising "polymer fibers" as including "woven and non-woven fabrics" further supports Defendants' proposed construction that a fabric comprising a **plurality of entangled polymer fibers** has fibers that are arranged with each other **in a nonwoven manner.**

**F.      Plaintiff Mischaracterizes the Examiner's Reason for Withdrawing the Restriction Requirement.**

The Examiner withdrew the restriction requirement because of "the **claim amendments** filed 17 March 2010" (Exhibit 2 hereto, May 11, 2010 Office Action, p. 2, ¶ 1; emphasis added).  It was the patent owner's <u>amendment of the claims</u> that resulted in the Examiner's withdrawal of the restriction requirement. Specifically, dependent Claims 27 and 28 were cancelled by the patent owner in the Amendment dated March 17, 2010.  (Exhibit 3 hereto, March 17, 2010 Amendment and Response in Reissue, pp. 5 and 9).

Importantly, cancelled dependent Claim 27 recited that the fabric was <u>woven</u>, but Claim 27 depended from Claim 23, which recited that the fabric comprised <u>entangled polymer fibers</u>.  This grouping of "<u>woven</u> fabric" (belonging in "Species B") with "<u>entangled</u> polymer fibers" (belonging in Species A") was contrary to the Examiner's classification of the different types of fabrics.  It is reasonable to conclude that the cancellation of Claim 27 was the reason the

Examiner withdrew the restriction requirement because the amended claims were no longer in conflict with the Examiner's "Species A" and "Species B" groupings.

The diagram below is intended to graphically illustrate the "Species A" and "Species B" groupings identified by the Examiner, and the problem with dependent Claim 27 ("woven" fabric) falling into the wrong "entangled polymer fiber" species identified by the Examiner.



By cancelling Claim 27, the patent owner conformed the claims to the Examiner's "Species A" and "Species B" groupings in which claims reciting "entangled polymer fibers" are inclusive of <u>nonwoven fabrics</u>, and claims only

14

reciting "polymer fibers" are inclusive of both <u>woven and nonwoven fabrics</u>. Defendants' proposed construction in which "entangled polymer fibers" are arranged in a <u>nonwoven manner</u> is fully supported by the Examiner's "Species A" and "Species B" groupings.

Plaintiff asserts:   "At the conclusion of the reissue prosecution, the Examiner's actions further were reviewed in detail, as evidenced by completion of the Examiner's reissue checklist, confirming the propriety of her examination and reissuance of the claims of the '695 Patent without the term "non-woven" as a limitation."  (Doc. 62, p. 18)  However, even a cursory review of the "checklist" shows that the Examiner's actions were not "reviewed" by anyone else; the "checklist" makes no mention of the term "nonwoven"; and the Examiner was to "Complete items 1-19 prior to completing a first Office action."  [R000031-R000036]

**G.    Plaintiff's Argument that Defendants' Claim Construction Would Not Cover Any Embodiment Disclosed in the Specification of the '695 Patent is Demonstrably Wrong.**

Figures 4-6 of the '695 Patent, reproduced below, illustrate fabrics comprising entangled polymer fibers as construed by Defendants.

15



These figures clearly show multiple fibers that are entangled with each other in a nonwoven manner – they are not interlaced in a repeating pattern like a woven fabric, but are instead twisted together, entwined into a confusing mass, and snarled.

In addition to Figs. 4-6 of the '695 Patent reproduced above, Figure 8 similarly illustrates a nonwoven fabric comprising a plurality of entangled polymer fibers (618) having a fiberglass scrim (616) entrapped and entangled with the entangled fibers (618):



Contrary to the argument presented by Plaintiff in its Opening Brief, Defendants have not taken the positon that the scrim (616) itself comprises entangled fibers, but rather the fabric (618) comprises entangled fibers in which the scrim is "entrapped and entangled".

## H.   Plaintiff Has Failed to Provide Any Meaningful Citations to the Specification of the '695 Patent or its Prosecution History to Support its Construction of "Entangled".

Contrary to Defendants' Opening Claim Construction Brief in which every occurrence of the words "entangled" and "entangling" appearing in the Specification of the '695 Patent are cited and explained, Plaintiff's Opening Brief is tellingly devoid of such citations.  Page 21 of Plaintiff's Brief contains the only citation to the text of the '695 Specification in which the word "entangled" appears (citing col. 17, lines 1-6).  Because the specification of a patent can be the single most important consideration when construing claim terms, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), it is remarkable that

Plaintiff did not cite 5 out of 6 of the occurrences of the word "entangled" contained in its own Specification, and failed to cite the only occurrence of the word "entangling" in its Specification.

Furthermore, Plaintiff does not address the comparative examples in the Specification where a silt retention system comprising a reinforced <u>nonwoven</u> fabric "according to the present invention" is compared and contrasted with a commercially available <u>woven</u> Type C silt fence.  (Doc. 63-1, col. 18, lines 49-56). The nonwoven fabric of the "invention" example is stated to be "needlepunched spunbond" fabric.  (Doc.63-1, col. 6, lines 48-53)  As disclosed elsewhere in the Specification "needlepunched spunbond polyester" contains "entangled polymer fibers".  (Doc. 63-1, col. 17, lines 1-6; col. 18, lines 37-43)  None of these citations to the '695 specification can be found in Plaintiff's Opening Brief.

Plaintiff further fails to address key portions of the Prosecution History that conflict with its proposed construction of "entangled".  For example, the inventor, Mr. Singleton, submitted several declarations to the USPTO in attempts to convince the Examiner that the non-woven "BSRF" silt fence of his invention was patentably superior to conventional woven Type C silt fences.

> ***Notably, the claimed invention has been found to be an approved alternative to heavy gauge Type-C silt fencing*** *that necessarily requires a wire backing for support and the use of steel support posts, while the claimed invention can be used with wooden*

> *support posts and does not require a wire backing for additional*
> *support and comparable effectiveness.*

(Doc. 63-5, July 12, 2009 Amendment and Response in Reissue, p. 19; emphasis added)

> 4. Attached herewith and identified as "Exhibit 1" is a copy of an
> evaluation of the reinforced silt retention sheet, which was
> produced in accordance with the construction of the reinforced silt
> retention recited by the claims of the current reissue application,
> conducted by Dr. Mark Risse, […]. As concluded by Dr. Risse in
> the evaluation attached as Exhibit 1, *the claimed reinforced silt*
> *retention sheet, identified as the "BSRF" in the evaluation,*
> *consistently removed greater amounts of sediment from the flow,*
> *and measured sediment removal efficiencies were uniformly higher*
> *for the BSRF than "Type C" silt fence, which is defined as a silt*
> *fence produced from a noncalendared* ***woven*** *fabric* constructed
> with monofilament yarns only […].

(Doc. 63-6, Declaration of Earl R. Singleton Under 35 U.S.C. 1.132, p. 2, ¶4; emphasis added)

Plaintiff's own expert testified that he created the definition of "entangled":

> Q.  Did you come up with that definition?
>
> A.  Yes.
>
> Q.  So you were the first one to suggest that entangled meant
>      connected and not readily separated?
>
> A.  Yes.

(Doc. 63-2, 76:6-12)

Furthermore, Dr. Adanur testified that when he was initially contacted by an agency to possibly serve as an expert for Plaintiff in this case, he was asked the following question:

> Q.   Did you get an email from someone at Thomson Reuters asking you if you could serve as a textile expert that can opine on whether or not the fibers in a woven fabric or product are entangled by the mechanical weaving process?
>
> A.   I believe so, yes.
>
> Q.   They asked you if you could give that opinion, and you told Thomson Reuters that you could, and that's how you got hired in this case?
>
> A.   Yes.

(*Id.*, 186:12-17).  Plaintiff's expert committed to giving this opinion before reading

the claims or specification of the '695 Patent:

> Q.   And so you were -- you gave that opinion before you had ever looked at any of the materials in this case?
>
> A.   That's right. I guess I'm not allowed to ask questions, but I'm curious now how many they contacted.

(*Id.*, 187:6-11)

I.   **Plaintiff's Late Attempt to use US Patent 4,069,564 as Extrinsic Evidence Should be Rejected.**

Plaintiff claims that US Patent No. 4,069,564 ("the '564 Patent") "refers to

interlacing and entangling interchangeably."  (Doc. 62, p. 24)  Plaintiff never

identified the '564 Patent as extrinsic evidence, and it should be given little or no

consideration by the Court.[2]

---

[2] In fact, the '564 Patent is titled "PROCESS FOR PRODUCING INTERLACED **OR** ENTANGLED MULTIFILAMENT YARNS."

Plaintiff's assertion that the '564 Patent uses interlacing and entangling interchangeably is also unreliable.  Plaintiff did not provide any foundation for this reference.  No expert has opined upon its relevance to the claimed invention in this case, and Plaintiff has not explained how one skilled in the art would rely upon the reference, let alone how it would support Plaintiff's proposed construction.

**J.     Plaintiff's Attempt to Distance itself from ASTM D-4632 in the Construction of "Ultimate Tensile Strength" Fails.**

Plaintiff states:  "While the exact phrase 'ultimate tensile strength' is not stated in the patent specification, the material strengths, including ranges of strengths to the point of failure are discussed and described by the patent."  (Doc. 62, p. 26).  However, what Plaintiff does not explain to the Court is that the Specification, when referring to the tensile strength of the invention, consistently uses one, and only one test – ASTM D-4632.  Absent a definitive testing method, these terms are indefinite.  Further, ASTM D-4632, as admitted by Plaintiff's own expert, is a test (1) to calculate the breaking load; (2) by averaging the values of the breaking load for all of the accepted test specimens; and (3) does not require removing one or more standard deviations from the average value.  (Doc. 65, 238:16 – 240:15)

Further, ASTMD-4632 defines "breaking load" as "the maximum force applied to a specimen in a tensile test carried to rupture."  (Doc. 51-15)  This is

consistent with Defendants' proposed construction ("*Ultimate tensile strength* is measured according to the ASTM D-4632 standard test procedure and means the maximum force applied to a reinforced silt retention sheet in a tensile test carried to rupture"). Plaintiff's attempt to define "ultimate tensile strength" as the "minimum" strength at which "at least a portion of the fabric will fail" is unsupported by the Specification, the ASTM D-4632 standard, and its own expert.

With respect to the requirement that the testing is performed on a ***reinforced portion of the fabric***, again as admitted by Plaintiff's expert regarding the language of Claim 20 (Doc. 65, 233:21 – 234:5):

> Q.   […] Sitting here today, reading it, as one skilled in the art, when it says, "Wherein, the reinforced silt retention sheet has an ultimate tensile strength ranging from about 100 pounds to 350 pounds in the warp direction," that actually would lead you to believe that it should be any testing should be done at the reinforced area?
>
> A.   Just reading the language in the claim, yes.

Plaintiff attempts to find support for its construction claiming:   "The Examiner understood the term 'ultimate tensile strength' was the tensile strength at which at least a portion of the fabric will fail – otherwise, the screen could not perform the intended function of retaining silt."  Plaintiff then sites to its Response to Official Action dated June 10, 2008 [A000028 and A000034], and the Notice of Allowance [A000013].  These pages do not support Plaintiff's argument, but rather

merely contain a recitation of the claim language without any discussion or analysis.

At page 27 of its Opening Brief, Plaintiff states that the standard ASTM D-4632 test should not be added into the claims, and that "ultimate tensile strength" cannot be determined by looking at the point of greatest strength.  At page 28 of its Brief, Plaintiff has created a diagram purportedly supporting its arguments.

In rebuttal to Plaintiff's newly created diagram, Defendants attach hereto as Exhibit 4, a report currently available on Plaintiff's website[3] that is directly contrary to Plaintiff's assertions and newly presented diagram.  The "Indexing Testing to Support Stormwater Management Erosion and Sediment Control Laboratory" report ("UCF Report") provides a detailed analysis of various properties of the commercial embodiment of the '695 Patent, called "BSRF".

At page 12 of the UCF Report, the ASTM D-4632 standard test is said to "determine the effective strength of the fabric."  Beginning at page 26 of the UCF Report, the use of the ASTM D-4632 procedure to test the strength of Plaintiff's BSRF material that is the subject of the '695 Patent is described.  Table 5 on page 30 of the UCF Report lists the peak loads for the test specimens, followed by several graphs that clearly demonstrate that the measured strengths of Plaintiff's

---

[3]http://www.siltsaver.com/wp-content/uploads/2016/08/University-of-Central-Florica-BSRF.pdf.

BSRF material are determined at the point of <u>maximum force</u> at which each specimen ruptures.  Table 5 and an exemplary graph from the UCF Report are reproduced below, with arrows drawn to the peak force in the graph that are reported in the highlighted portion of Table 5:

**Table 5 Grab strength and strain for BSRF silt fence**

| Test Number | Peak Load (lb) | | | | Strain at Break Load (%) | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Cross-machine Direction | | Machine Direction | | Cross-machine Direction | | Machine Direction | |
| | Dry | Wet | Dry | Wet | Dry | Wet | Dry | Wet |
| 1 | 154.63 | 167.48 | 111.98 | 133.77 | 38.62 | 28.63 | 35.49 | 40.69 |
| 2 | 168.15 | 162.60 | 142.95 | 132.21 | 33.99 | 33.17 | 44.23 | 35.79 |
| 3 | 148.20 | 163.91 | 129.90 | 119.39 | 40.09 | 35.49 | 39.87 | 32.81 |
| 4 | 161.37 | 172.08 | 132.31 | 130.82 | 38.12 | 33.57 | 41.91 | 33.25 |
| 5 | 174.28 | 178.96 | 110.34 | 127.55 | 39.99 | 29.40 | 33.61 | 36.28 |
| 6 | 154.64 | 187.55 | 138.63 | 140.53 | 39.67 | 34.44 | 37.93 | 37.26 |
| 7 | 178.34 | 189.88 | 132.80 | 136.82 | 40.70 | 31.44 | 44.04 | 38.73 |
| 8 | 170.51 | 180.57 | 135.17 | 143.21 | 40.90 | 30.71 | 40.37 | 35.66 |
| 9 | 170.51 | 163.06 | 123.25 | 123.53 | 37.09 | 31.88 | 37.67 | 34.03 |
| 10 | 151.14 | 165.73 | 141.23 | 141.21 | 33.97 | 37.38 | 43.03 | 41.70 |
| **Mean** | **163.18** | **173.18** | **129.86** | **132.90** | **38.32** | **32.61** | **39.81** | **36.62** |
| Std. dev. | 10.56 | 10.34 | 11.38 | 7.84 | 2.57 | 2.73 | 3.62 | 3.01 |
| CV | 0.065 | 0.060 | 0.088 | 0.059 | 0.067 | 0.084 | 0.091 | 0.082 |



**Figure 16 Load versus strain plot for dry, machine direction (DMD) on BSRF**

Plaintiff's attempt to circumvent application of the ASTM D-4632 test procedure when determining the ultimate tensile strength recited in the claims of the '695 Patent is belied by the test results published on its own website.

Defendants' construction of "ultimate tensile strength" is true to the language of the claims, the Specification and the Prosecution History, and respectfully, should be adopted by the Court.

## III.  CONCLUSION

Accordingly, Defendants' proposed constructions should be adopted.

Respectfully submitted this 30th day of May, 2017,

> **PIETRAGALLO GORDON ALFANO
> BOSICK & RASPANTI, LLP**
>
> By:  */s/ Eric G. Soller*
> Eric G. Soller, Esquire (admitted *pro hac
> vice*)
> One Oxford Centre
> The Thirty-Eighth Floor
> Pittsburgh, PA 15219
> (412) 263-2000
> EGS@Pietragallo.com
>
> **LEECH TISHMAN FUSCALDO & LAMPL
> LLC**
>
> Alan G. Towner, Esquire (admitted *pro
> hac vice*)
> 525 William Penn Place
> 28th Floor
> Pittsburgh, PA  15219
> (412) 261-1600
> atowner@LeechTishman.com
>
> **KILPATRICK TOWNSEND & STOCKTON
> LLP**
>
> Audra Dial, Esquire
> 1100 Peachtree Street NE
> Suite 2800
> Atlanta, GA  30309-4528
> (404) 815-6307
> adial@kilpatricktownsend.com
>
> *Attorneys for Denny Hastings d/b/a
> Friendly Environment and Atlantic
> Construction Fabrics, Inc., a Virginia
> corporation, d/b/a ACF Environmental*

26

## **LOCAL RULE 7.1 COMPLIANCE CERTIFICATE**

I hereby certify that the foregoing DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF, was prepared using the Times New Roman 14-point font, and otherwise conforms to the requirements of Local Rule 5.1 and 7.1D.

This 30th day of May, 2017.

*/s/ Eric G. Soller*
Eric G. Soller
*One of the Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 30th day of May, 2017, I electronically filed the foregoing DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record for Plaintiff.

Kirk W. Watkins
DAVIS, ZIPPERMAN, KIRSCHENBAUM & LOTITO, LLP
918 Ponce de Leon Avenue, NE
Atlanta, Georgia  30306
<u>kwatkins@dzkl.com</u>

D. Scott Sudderth
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
271 17th Street NW, Suite 2400
Atlanta, Georgia 30363
<u>ssudderth@wcsr.com</u>

/s/ *Eric G. Soller*
Eric G. Soller, Esq.
*One of the Attorneys for Defendants*

28