IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SILT SAVER, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:16-cv-01137-SCJ |
| DENNY HASTINGS, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**POST MARKMAN BRIEFING REQUESTED BY SPECIAL MASTER**

# Introduction

The lines between the positions of Defendants and Silt Saver are finely drawn. Defendants seek to rewrite the wording of the claims to import limitations from only particular embodiments and from tables in the specification, and rely heavily on extrinsic evidence to rewrite the claims to avoid their infringement. Silt Saver has shown that the claim language is clear on its face and is supported by the intrinsic evidence such that no modifications are needed to clearly communicate to one skilled in the art what the patentee intended – the invention of a reinforced silt retention screen that performs at a high level in the field.

Silt Saver offers extrinsic evidence of Defendants' own creation not to try to change the meaning of the disputed claim terms, but instead to reveal the illogic of Defendants' attempt to suggest one of ordinary skill in the art would confine measurements of tensile strength to the reinforcement bands of the silt screen.

Silt Saver also demonstrates that Defendants' effort to construe ASTM D-4632 is part of a strategy of "manifest complications." Defendants ask the Special Master to import a term ("ASTM D-4632") into claims that make <u>no reference</u> to that term. Defendants then seek to impose on that term an interpretation that contradicts what one of ordinary skill in the art would understand "ultimate" (the actual term used in the claim) to mean. Should these efforts to rewrite and ignore the actual claim language be permitted in

the construction phase, the results will only lead to confusion of the jury, and will impede a straightforward analysis of infringement in these proceedings.

> **Question 1: Whether the Wolfe patent application filed by certain of the Defendants can properly be considered as evidence by the Special Master?**

The Wolfe Application (United States Patent Application Publication No. US 2016/0362865 A1) is extrinsic evidence as it is not contained in the patent record. The parties disagree on whether the Wolfe Application (and thus the statements made therein by at least some of the Defendants that specifically relate to application of a standard at issue in the present case) can be considered by the Special Master. Plaintiff shows this evidence is permissible not only to help explain application of the standard to a composite material, but also as an admission contradicting the other "extrinsic evidence" Defendants try to rely on.

The Federal Circuit notably has considered post-issuance extrinsic evidence, for example, in *In re Baxter Travenol Labs*, 952 F.2d 388, 390, 21 U.S.P.Q.2d 1281. 1284 (Fed. Cir. 1991). In *Baxter,* the appellant argued that post-issuance extrinsic evidence comprised of "depositions, declarations, and admissions . . . may not be considered when determining the anticipatory teaching of a reference." The Court rejected this position,[1]

---

[1] While an admission of a legal conclusion such as "definiteness" by a defendant would not be controlling of case outcome, inconsistent positions on facts or expert opinions by a party do not fall within the scope of that exception. *See Exxon Research & Eng'g Co. v.*

2

holding: "This is incorrect, Baxter used to explain, but not expand, the meaning of a reference." *Id*.  Here, the Wolfe Application is offered for that same purpose of explaining and demonstrating that, while one of ordinary skill in the field of silt screens might utilize a grab test as described in ASTM-D-4632 on a belted silt fence, they would not do so on randomly selected portions of the silt screen.  In similar fashion to the claimed silt retention fence, the Wolfe Application describes taking measurements of "ultimate grab tensile strength", not randomly or solely along where the reinforcement bands lie, but rather isolated separately as to the reinforcement elements and to the screen material – reporting both.  See Wolfe Application, pages 7-9 para. [0077] - [0093], page 11, Table 1, page 12, Table 2, page 13, Table 3., page 14, and claims 25 and 26—note the * statement of "*Material Properties for Entire Reinforced Fence" in the middle of both tables 1 and 2 where the fabric "excluding reinforcing straps" is measured.  Table 1 from the Wolfe Application with the relevant portions highlighted is set forth below.

---

*United States,* 46 Fed. Cl. 278, 301-02 (2000).  *See also Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1350 (Fed. Cir. 2005) (admission that the legal meaning of "a" suggests one or more not overcome by attempts to import from the specification a number or numbers relating to an embodiment into the claim).  Similarly, Defendants' effort to import the specific ASTM D-4632 standard into claims that do not incorporate the standard must fail.

TABLE 1

| Test Method | Minimum Average Roll Values |
|---|---|
| Material Properties for Permeable Geotextile Material (excluding reinforcing straps and post-tensioning tendons) | |
| MD and TD Base Fabric Wide Width Tensile-Ultimate (ASTM D4595) | 1,000 to 11,000 lbs/ft |
| MD Base Fabric Grab Tensile Strength-Ultimate (ASTM D4632) | (360 to 3,700 lbs)-MD × (451 to 3,700 lbs)-TD |
| Base Fabric CBR Puncture (ASTM D6241) | 200 to 4,000 lbs |
| Base Fabric Trapezoidal Tear (ASTM D4533) | (50 to 1,000 lbs)-MD × (50 to 1,000 lbs)-TD |
| Base Fabric Mullen Burst (ASTM D3786) | 200 to 2,500 psi |
| Base Fabric UV Stability (ASTM D4355) | 90% to 100% Tensile Strength Retained |
| *Material Properties for Entire Reinforced Fence | |

Silt Saver understands the intrinsic record controls in claim construction and, indeed, believes the intrinsic record clearly supports its positions set out in its briefing and claim construction presentation materials. To the contrary, as indicated in their briefings and presentation materials, Defendants place significant reliance on "extrinsic evidence" to support their claim construction positions. To the extent Defendants' extrinsic evidence is to be considered, the Wolfe Application, although later in time and extrinsic in nature, should be similarly considered, as this evidence comes from a source—*i.e.* Defendants' own application for a reinforced silt fence product -- and presents a contrary position to what Defendants advocate in this case, thus elevating its reliability as an admission similar to those determinative in *Baxter*.

As noted, Silt Saver only offers the Wolfe Application to prevent Defendants from inappropriately changing the meaning of the claim terms, including the ultimate strength term, to somehow necessarily incorporate the ASTM D-4632 standard and further to require averaging of test results and measurement of only the reinforced elements.  Silt Saver is not using the admissions made in the Wolfe Application to vary the terms of the '695 Patent, but for the opposite purpose, to preclude Defendants from changing the meaning of claim terms that do not incorporate the ASTM D-4632 standard.  In that respect, the Wolfe Application thus furthers the "probe for bias" purpose needed to test the extrinsic evidence offered by Defendants.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318-19 (Fed. Cir. 2005).

Consideration of Defendants' contradictory positions is further analogous to the Courts' consideration of post-issuance disclaimers made by a patentee in construing the issued patent. For example, see *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1307 (Fed. Cir. 2007):

Verizon nonetheless argues that the disclaimer in the '291 application process (leading to the '497 patent) should not apply to the '880 patent because it occurred after the '880 patent issued. We reject this argument. As we held in *Microsoft*, where we faced the same situation (disclaimer occurred after patent-in-suit had issued), "we think that it is not unsound to apply the same interpretation to th[e] patent[-in-suit]," "even though [that] patent had already issued." 357 F.3d at 1350.

*See also Scanner Techs. Corp. v. Icos Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1375 (Fed. Cir. 2008), wherein the Federal Circuit found that the trial court was entitled to credit the

5

testimony of a witness who "has told a coherent and facially plausible story that is not contradicted by extrinsic evidence." *Id.*, at 1378. With the Wolfe Application contradicting the positions taken by Defendants' expert (other extrinsic evidence), this Application becomes particularly relevant to the Special Master's consideration. Silt Saver further suggests that Wolfe has himself, as an author of this Application, created extrinsic evidence relevant to the meaning of "ultimate tensile strength" that should be receivable in this action. *See Key Pharm. v. Hercon Labs Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).

Defendants' reliance upon *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1312-13 (Fed. Cir. 2014), and *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167-68 (Fed. Cir. 2004), further is misplaced. Both of these cases addressed an issue of whether or not the patentee's statements made in unrelated applications were relevant in a claim construction analysis, finding the circumstances of the proffered unrelated applications in those cases were different and the patentee should not be held to statements made with different requirements or patent objectives, as they were "not relevant to claim construction." *Apple*, at 1312. While *Apple* did not discuss the distinctions between intrinsic and extrinsic evidence in context of the issue before the Court, *Goldenberg* did - specifically limiting its finding to exclusion of the evidence **as not part of the intrinsic evidence**. *Goldenberg*, at 1168 ("Consequently the passages are not part of the intrinsic

evidence."). Furthermore, the court in *Apple* did hold the patentee to statements made during a Japanese prosecution on grounds that: (1) the statements were "'made in an official proceeding in which the patentee had every incentive to exercise care in characterizing the scope of its invention,'" and (2) "the two patents are related and share a familial relationship." *Id*. The first of these two principles applies here.

Examination of both *Apple* and *Goldenberg*, thus shows that the actual question at issue was whether the patentee's statements made in prosecution of other patents should control the construction of the term at issue as <u>intrinsic evidence</u>. Here the extrinsic evidence of Defendants' statements against interest are being used only to show the inconsistency with other <u>extrinsic evidence</u> offered by the Defendants. The Wolfe Application satisfies all the requirements to be considered as extrinsic evidence, particularly for the limited purpose for which it is offered – to avoid Defendants' changing of claim terms by importing into the claims an ASTM standard that, though used in the specifications, was not incorporated into the claims in question.

> **Question 2: Whether the parties would agree that the disputed claim term "ASTM D-4632" be construed to mean: "A grab test is a tensile test in which the specimen is loaded until breaking."?**

Silt Saver cannot agree that the standard ASTM D-4632 be construed to mean "a tensile test in which the specimen is loaded until breaking." Silt Saver offers the following rationale for its position:

(1)     Defining ASTM D-4632 begs the question of whether the standard is to be imported in whole or part into the claims of the '695 Patent that make no mention of that standard.

(2)     ASTM D-4632 is a complex, multi-page standard that cannot be easily summarized in a single short phrase without introducing as many (or more) issues than any resolved by the summary.

(3)     The proffered definition does not directly address the following differences between the parties (but may have the effect of shifting arguments or layering additional arguments onto the current adverse positions):

    a.     Can the "grab test" definition for ASTM D-4632 be applied to determine the "ultimate tensile strength," without further requiring multiple tests of various portions of the fence and averaging results?

    b.     Must the grab test be applied only to the reinforced elements on the silt retention fence?

    c.     Would one of ordinary skill in the art adopt the specific averaging mechanism of ASTM D-4632 in determining the silt retention fence's "ultimate tensile strength," knowing that an average strength of a non-uniform composition fence is unrelated to the fence's superior performance and that ASTM D-4632 was not mentioned in the claim?

    d.      If the ASTM D-4632 standard is defined as "a tensile test in which the specimen is loaded until breaking," can the experts testify about the aspects and application of the standard without being susceptible to objections based on the term being defined as a matter of law?

Silt Saver submits that embarking on a course of trying to construe ASTM D-4632, particularly to the extent that this definition will then be applied into claims where it is not recited, creates far more issues than it resolves. Rather than inform the jury, it will potentially handcuff the experts in ways that cannot be anticipated. Further, Silt Saver anticipates that Defendants would argue that due to its being construed, the term must be incorporated into claims that do not mention the term. Silt Saver is adamantly opposed to such an unwarranted and direct importation from the specification into the claims.

The Federal Circuit likewise has summarily rejected such importations from the specifications to vary the meaning of unambiguous claim terms. See *Arlington Ind. Inc. v Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1249 (2011) [District Court erred in construction "by importing a 'split' limitation from the specifications into the claims". Furthermore, the Court found that importing the limitation "improperly discounts substantive differences between the claims." *Id.*, at 1254, *citing Phillips* at 1314]. Here, ASTM D-4632 is mentioned only in dependent Claim 5—referring to "tensile strength"—yet Defendants have asked to import the ASTM D-4632 standard into claims

where this term is not only unmentioned, but also where the term "ultimate" is used to describe the strength of the fabric.  Defendants would afford no meaning whatsoever to the term "ultimate" and eviscerate the important principle of claim differentiation in the process.  *Id.*

The Federal Circuit's decision, in *Arlington,* in which the Court noted the "manifest complications" of importing limitations from the claims into the claims, *Id.*, at 1255, bears a striking similarity to this case where Defendants advocate importing the ASTM D-4632 standard into the claims <u>and</u> mandating how the standard is applied (by importing its use in tables in the specification).  Similarly, in *Arlington* the patent challenger sought to import the term "split" into the claim and further import a description from the specification of "a raised shoulder" to brace its initial proposed construction.  *Id.*  The Court found that the patent challenger was on the wrong side of "the fine line between reading a claim in light of the specification and importing a limitation from the specification into the claim."  *Id.*  Defendants find themselves in the same position – on the wrong side of the line.

Respectfully submitted this 29th day of September, 2017.

                        DAVIS, ZIPPERMAN, KIRSCHENBAUM & LOTITO, LLP

                        */s/ Kirk W. Watkins*
                        Kirk W. Watkins
                        Georgia Bar No. 740550
                        Tel: (404) 688-2000

kwatkins@dzkl.com

918 Ponce de Leon Avenue, NE
Atlanta, Georgia  30306

Additional Counsel:

D. Scott Sudderth
WOMBLE CARLYLE SANDRIDGE
& RICE, LLP
Georgia Bar No. 690760
Tel: (404) 962-7527
ssudderth@wcsr.com
271 17th Street NW, Suite 2400
Atlanta, Georgia 30363

**COUNSEL FOR PLAINTIFF**

## LOCAL RULE 7.1 COMPLIANCE CERTIFICATE

I hereby certify that the foregoing *POST MARKMAN BRIEFING REQUESTED BY SPECIAL MASTER,* was prepared using the Times New Roman 14-point font, and otherwise conforms to the requirements of Local Rule 5.1(c) and 7.1.D.

This 29th day of September, 2017.

/s/ *Kirk W. Watkins*
Kirk W. Watkins
GA Bar No. 740550

## CERTIFICATE OF SERVICE

I hereby certify that I served the *POST MARKMAN BRIEFING REQUESTED BY SPECIAL MASTER,* upon all parties to this action by email.

This 29th day of September, 2017.

>/s/ Kirk W. Watkins
Kirk W. Watkins
GA Bar No. 740550