**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SILT SAVER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 1:16-cv-01137-SCJ** |
| **DENNY HASTINGS d/b/a** | ) | |
| **FRIENDLY ENVIRONMENT and** | ) | |
| **ATLANTIC CONSTRUCTION** | ) | |
| **FABRICS, INC., a Virginia** | ) | |
| **corporation, d/b/a ACF** | ) | |
| **ENVIRONMENTAL, and KEVIN** | ) | |
| **B. WOLFE** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**
**REQUESTED BY THE SPECIAL MASTER**

## I. INTRODUCTION

At the Claim Construction Hearing on August 31, 2017, the Special Master requested that the parties further brief two issues: (1) Whether the patent application filed by certain of the Defendants can properly be considered as evidence by the Special Master; and (2) Whether the parties would agree that the disputed claim term "ASTM D-4632" should be construed to mean: "*A grab test is a tensile test in which the specimen is loaded until breaking*."

## II.   BACKGROUND

On June 10, 2016, Thomas Kyle Segroves, Stephen Sliger and Kevin Wolfe filed a patent application bearing Serial Number 15/179,666 (hereinafter, the "Friendly Environment Application"), which claimed priority from a provisional application filed on June 10, 2015 (Serial No. 62/173,736).

## III.   USE OF UNRELATED PATENTS IN CLAIM CONSTRUCTION

Plaintiff's attempt to use the Friendly Environment Application in claim construction is improper, regardless of whether the document may be generally "admissible" as an exception to the hearsay rule, such as an admission or a declaration against interest.  The issue here is whether the Friendly Environment Application is relevant extrinsic evidence for claim construction.

Federal Circuit precedent is clear that unrelated patent applications have no relevance to claim construction. The Friendly Environment Application is not related in any way to the Patent-in-Suit, and therefore, consideration of that application for purposes of claim construction would be an error.  Moreover, consideration of the Friendly Environment Application is also improper as it interjects the accused instrumentality into the claim construction process.  Finally, the Friendly Environment Application was filed more than 10 years after the priority application of the Patent-in-Suit, and does not aid in determining the

2

meaning of the disputed claim terms at the time of the invention of the Patent-in-Suit.

## A.      Unrelated Applications are Not Relevant to Claim Construction.

In *Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1312 (Fed. Cir. 2014), the Federal Circuit, citing *Microsoft Corp. v. Multi-Tech Sys., Inc*., 357 F.3d 1340, 1350 (Fed. Cir. 2004) stated: "This court has previously found that statements made in related, later-prosecuted U.S. patents may inform the meaning of earlier issued claims." However, the Court went on to hold: "Of course, statements made in **<u>unrelated</u>** applications are not relevant to claim construction." (*Id*.; emphasis added).

In *Goldenberg v. Cytogen, Inc.,* 373 F.3d 1158, 1167 (Fed. Cir. 2004), the Federal Circuit held: "In the absence of an incorporation into the intrinsic evidence, this court's precedent takes a narrow view on when a related patent or its prosecution history is available to construe the claims of a patent at issue and draws a distinct line between patents that have a familial relationship and those that do not." In reaching this conclusion, the *Goldenberg* Court citied to three prior Federal Circuit decisions: *Tex. Digital Sys. v. Telegenix, Inc.,* 308 F.3d 1193, 1211 (Fed. Cir. 2002) ("explaining that an unrelated patent 'sheds no light' on the claims in the patent at issue"); *Abbott Labs. v. Dey, L.P.,* 287 F.3d 1097, 1105 (Fed. Cir.

2002) ("finding an insufficient relationship between patents to rely on statements from the prosecution history of one patent for prosecution history estoppel regarding the other where the 'applications [had] no formal relationship and were presented to the patent office as patentably distinct inventions'"); and *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) ("using statements from one patent's prosecution history to construe the claims of another patent where the two patents shared a parent application" was acceptable).

The *Goldenberg* Court explained:  "This dividing line was left undisturbed by our most recent decision on the issue, *Microsoft Corp. v. Multi-Tech Systems, Inc.*, which permitted reliance on statements made subsequent to the issuance of a patent when construing its claims where the statements were made in connection with continued prosecution of <u>sibling applications</u>." *Goldenberg*, 373 F.3d at 1167 (citations omitted; emphasis added).

In the present case, the Friendly Environment Application has **<u>no relationship</u>** to the Patent-in-Suit.  It is **<u>not</u>** a continuation, continuation-in-part or a divisional of the application that lead to the Patent-in-Suit.  There are **<u>no</u>** common owners or inventors.  There is **<u>no</u>** incorporation of the Patent-in-Suit by reference in the Friendly Environment Application.  Because there is no familial

relationship between the Friendly Environment Application and the Patent-in-Suit, consideration of the Friendly Environment Application would be improper.

Further, contrary to Plaintiff's contention that the applications are "related" because they involve similar subject matter as Plaintiff argued at the Claim Construction Hearing, the Federal Circuit defines "relationship" as familial, not subject matter similarity.  See *Goldberg*, 373 F.3d at 1167, citing *Abbott Labs*., 287 F.3d at 1105.

## B.    It is Improper to Use the Accused Device in Claim Construction.

Plaintiff, by attempting to admit evidence from the Friendly Environment Application, is effectively trying use the accused instrumentality for claim construction purposes.   The Federal Circuit has clearly and repeatedly held: "[C]laims may not be construed with reference to the accused device."  *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co*., 442 F.3d 1322, 1330-31 (Fed. Cir. 2006); *NeoMagic Corp. v. Trident Microsystems, Inc.,* 287 F.3d 1062, 1074 (Fed. Cir. 2002); *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1118 (Fed. Cir. 1985) (*en banc*). The Court in *Wilson Sporting Goods* went on the hold:  "As noted earlier, that rule posits that a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language. Thus, the rule forbids a court from tailoring a claim construction to fit

5

the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement. In other words, it forbids biasing the claim construction process to exclude or include specific features of the accused product or process."

In light of the fact that the Friendly Environment Application describes the accused instrumentalities, it would be improper for the Court to consider it as extrinsic evidence in claim construction.

## C.   The Friendly Environment Application Has No Relevance to Claim Construction Because it is Far Past the Time of Invention of the Patent-in-Suit.

The Patent-in-Suit claims priority from an application filed in 2002, whereas the Friendly Environment Application claims priority from an application filed in 2015.  A court construing a patent claim seeks to accord a claim the meaning it would have had to a person of ordinary skill in the art <u>at the time of the invention</u>. See, e.g., *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1313 (Fed.Cir.2004); *Resqnet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1378 (Fed.Cir.2003); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed.Cir.2001).  There is no support in the record for linking the meaning of the term "ultimate" to one skilled in the art in 2015 and the meaning to one skilled in

the art in 2002.  Therefore, the Friendly Environment Application cannot be used as evidence of the meaning of the term "ultimate" to one skilled in the art in 2002.

Accordingly, the Friendly Environment Application is not relevant to claim construction.

**D.    The Content of the Friendly Environment Application provides no Support for Plaintiff's Proposed Construction.**

Even if the Friendly Environment Application were to be considered it provides no support for Plaintiff's theory that "ultimate tensile strength" means "minimum" or "first point of failure".  Rather, it confirms Defendants' proposed construction that the use of the term "ultimate tensile strength" in the claim is used in conjunction with the ASTM D-4632 "Standard Test Method for Grab Breaking Load and Elongation of Textiles", which defines the breaking load as, "the maximum force applied to a specimen in a tensile test carried to rupture."  ASTM D-4632 further requires that multiple test specimens are subjected to the "rupture" test and the loads are to be averaged to obtain the ultimate strength values.  (ASTM D-4632, "11. **Calculation**.  11.1 *Breaking Load*--Calculate the breaking load by averaging the value of breaking load for all accepted specimen results.")

Accordingly, the Friendly Environment Application does not support Plaintiff's proposed construction of "ultimate tensile strength" and cannot properly be considered as evidence by the Special Master for claim construction purposes.

7

**E.     Reservation of Rights.**

At the present time, Defendants do not know how Plaintiff intends to use the Friendly Environment Application, or whether the Special Master will consider it for any purpose.   Should the Special Master agree to consider the Friendly Environment Application, Defendants respectfully reserve the right to address the substance of the Friendly Application in detail so that Defendants can respond to Plaintiff's yet undisclosed intentions or arguments.

## IV.     THE CLAIM TERM "ASTM D-4632"

During the Claim Construction Hearing, the Special Master referred the parties to a document contained in the Prosecution History of the Patent-in-Suit.  In particular, the Special Master referenced two sentences from the extrinsic record: "Grab tests using ASTM Standard D4632-91(ASTM, 2003) were conducted on the silt-saver test fence material in both a wet and dry state. A grab test is a tensile test in which the specimen is loaded until breaking."  [R000139]

The Special Master asked if the parties could agree whether the term "ASTM D-4632" can be construed to mean:  "*A grab test is a tensile test in which the specimen is loaded until breaking*."

Although Defendants agree that the word "breaking" is synonymous with "rupture", Defendants cannot agree to this proposed construction, because it does

not to take into account the fact that the ASTM D-4632 standard test requires that <u>multiple specimens</u> be loaded until rupture/breaking, and further requires the rupture/breaking loads of the specimens to be <u>averaged</u> to give a single value.  In other words, the proposed construction over simplifies the ASTM D-4632 test procedure, as understood by those skilled in the art.

Defendants' proposed construction is supported by the published ASTM D-4632 test procedure itself.  It is also supported by Defendants' expert.  *See* Brookstein Report at ¶¶ 131 and 137.  Plaintiff's own expert has conceded that there is nothing incorrect or inaccurate with Defendant's proposed construction. *See* Adanur Transcript at 271:19- 272:17.

The need to test multiple specimens and take the average rupture/breaking load from such specimens in accordance with the ASTM D-4632 procedure has been confirmed by Plaintiff.  As set forth in Plaintiff's own product literature[1] and discussed during the claim construction hearing (*see* Defendants' Claim Construction Slides 34-37 and Hearing Tr. at 95:2-20 and 112:13-116:9). Plaintiff follows the ASTM procedure proposed by Defendants when reporting its own strength values.  As shown in the table and graph below, Plaintiff reports the

---

[1]https://siltsaver.com/wp-content/uploads/2016/08/University-of-Central-Florica-BSRF.pdf

strength of its silt fence by averaging multiple test specimens at their rupture/breaking points.



**Table 5 Grab strength and strain for BSRF silt fence**

| Test Number | Peak Load (lb) | | | | Strain at Break Load (%) | | | |
| | Cross-machine Direction | | Machine Direction | | Cross-machine Direction | | Machine Direction | |
| | Dry | Wet | Dry | Wet | Dry | Wet | Dry | Wet |
|---|---|---|---|---|---|---|---|---|
| 1 | 154.63 | 167.48 | 111.98 | 133.77 | 38.62 | 28.63 | 35.49 | 40.69 |
| 2 | 168.15 | 162.60 | 142.95 | 132.21 | 33.99 | 33.17 | 44.23 | 35.79 |
| 3 | 148.20 | 163.91 | 129.90 | 119.39 | 40.09 | 35.49 | 39.87 | 32.81 |
| 4 | 161.37 | 172.08 | 132.31 | 130.82 | 38.12 | 33.57 | 41.91 | 33.25 |
| 5 | 174.28 | 178.96 | 110.34 | 127.55 | 39.99 | 29.40 | 33.61 | 36.28 |
| 6 | 154.64 | 187.55 | 138.63 | 140.53 | 39.67 | 34.44 | 37.93 | 37.26 |
| 7 | 178.34 | 189.88 | 132.80 | 136.82 | 40.70 | 31.44 | 44.04 | 38.73 |
| 8 | 170.51 | 180.57 | 135.17 | 143.21 | 40.90 | 30.71 | 40.37 | 35.66 |
| 9 | 170.51 | 163.06 | 123.25 | 123.53 | 37.09 | 31.88 | 37.67 | 34.03 |
| 10 | 151.14 | 165.73 | 141.23 | 141.21 | 33.97 | 37.38 | 43.03 | 41.70 |
| Mean | 163.18 | 173.18 | 129.86 | 132.90 | 38.32 | 32.61 | 39.81 | 36.62 |
| Std. dev. | 10.56 | 10.34 | 11.38 | 7.84 | 2.57 | 2.73 | 3.62 | 3.01 |
| CV | 0.065 | 0.060 | 0.088 | 0.059 | 0.067 | 0.084 | 0.091 | 0.082 |

*Specimen #2 Highest Rupture/Breaking Load*

*Average Rupture/Breaking Load of All Specimens (129.86 lbs.)*

*Specimen #5 Lowest Rupture/Breaking Load*

Average Peak load = 129.9 lb; Strain at Peak Load = 39.8 %

*Rupture/Breaking Load of Highest Specimen (No. 2, 142.95 lbs.)*

*Average Rupture/Breaking Load of All Specimens (129.86 lbs.)*

**Figure 16 Load versus strain plot for dry, machine direction (DMD) on BSRF**

*Rupture/Breaking Load of Lowest Specimen (No. 5, 110.34 lbs.)*

29

As such, Defendants respectfully request that the Special Master adopt their proposed construction of "ASTM D-4632."

Respectfully submitted this 29th day of September, 2017,

**KILPATRICK TOWNSEND & STOCKTON LLP**

By: */s/ Audra Dial*
Audra Dial, Esq.
1100 Peachtree Street NE
Suite 2800
Atlanta, GA  30309-4528
(404) 815-6307
adial@kilpatricktownsend.com

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**

Eric G. Soller, Esq. (admitted *pro hac vice*)
One Oxford Centre
The Thirty-Eighth Floor
Pittsburgh, PA 15219
(412) 263-2000
EGS@Pietragallo.com

**LEECH TISHMAN FUSCALDO & LAMPL LLC**

Alan G. Towner, Esq. (admitted *pro hac vice*)
525 William Penn Place
28th Floor
Pittsburgh, PA  15219
(412) 261-1600
atowner@LeechTishman.com

*Attorneys for Denny Hastings d/b/a Friendly Environment and Atlantic Construction Fabrics, Inc., a Virginia corporation, d/b/a ACF Environmental*

## <u>LOCAL RULE 7.1 COMPLIANCE CERTIFICATE</u>

I hereby certify that the foregoing DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF REQUESTED BY THE SPECIAL MASTER, was prepared using the Times New Roman 14-point font, and otherwise conforms to the requirements of Local Rule 5.1 and 7.1D.

This 29th day of September, 2017.

*/s/ Audra Dial*
Audra Dial
*One of the Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 29th day of September, 2017, I electronically filed the foregoing DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF REQUESTED BY THE SPECIAL MASTER with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the Special Master and the following attorneys of record for Plaintiff:

William H. Needle
JAMS ADR
1201 W. Peachtree St. NW
Atlanta, GA 30309
wneedle@jamsadr.com

Kirk W. Watkins
DAVIS, ZIPPERMAN, KIRSCHENBAUM & LOTITO, LLP
918 Ponce de Leon Avenue, NE
Atlanta, Georgia  30306
kwatkins@dzkl.com

D. Scott Sudderth
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
271 17th Street NW, Suite 2400
Atlanta, Georgia 30363
ssudderth@wcsr.com

*/s/ Audra Dial*
Audra Dial, Esq.
*One of the Attorneys for Defendants*